[No. 5664. Decided September 8, 1905.]

ADOLPH ENGLER, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.[1]

MASTER AND SERVANT—WHEN RELATION EXISTS—MUNICIPAL CORPORATION AND INDEPENDENT CONTRACTOR — PERSONAL INJURIES TO EMPLOYEE OF CONTRACTOR ON STREET WORK — NEGLIGENCE OF CITY ENGINEER—POWER TO SUPERINTEND WORK AND DISCHARGE MEN. A contractor for the construction of a cement sidewalk, having full control of the manner of doing the work and the selection of his men and and materials, is an independent contractor, although his contract provides that the improvement shall be under the superintendence of the city engineer, whose directions shall be obeyed, that orders shall be given to the contractor or his superintendent having immediate charge, and that incompetent men shall be discharged on his requisition; and the city is therefore not liable to an employee of the contractor, a laborer in a gravel pit, for injuries sustained through obeying an order of the city engineer to work in a dangerous place; since the contract gave the engineer no right to direct individual employees, and the power of superintendence does not affect the relation of an independent contractor.

Appeal from a judgment of the superior court for King county, Hatch, J., entered October 12, 1904, upon granting a nonsuit at the close of plaintiff's case, in an action for personal injuries sustained by a laborer in a sand pit. Affirmed.

1Reported in 82 Pac. 136.

*Benson & Hall* and *Waterman & Hendron,* for appellant.

*William Parmerlee (Scott Calhoun,* of counsel), for respondent.

CROW, J.—Action by appellant, Adolph Engler, against the city of Seattle, respondent, to recover damages for personal injuries sustained. In his amended complaint, appellant alleged: That on September 14, 1901, respondent entered into a written contract with T. Ryan & Company, a copartnership, by the terms of which said Ryan & Company were to construct a cement sidewalk and certain other improvements, on Second avenue, in said city; that two certain general stipulations, contained in the specifications attached to said contract and made a part thereof, provided as follows:

"Plans and superintendence—This improvement shall be under the superintendence of the city engineer, and any orders or directions given by him, or his duly appointed representative, shall be respected and immediately and strictly obeyed by the contractor or any overseer in charge of the work. It is hereby understood that wherever the term 'engineer' or city engineer are mentioned in these specifications, it shall mean himself or any representative duly appointed by him.

"General stipulations — Whenever the contractor is not present on the work, orders will be given to the superintendent or overseer who may have immediate charge thereof, and shall by them be received and strictly obeyed. And if any person employed on the work shall refuse or neglect to obey the directions of the city engineer or board of public works in anything relating to the work, or shall appear to be incompetent, disorderly or unfaithful, he shall, upon the requisition of the engineer, be at once discharged, and not again employed upon any part of the work;"

that appellant, as a laborer, was employed by and working for Ryan & Company, in the performance of said contract; that one John James, a duly authorized representative of the city engineer, on November 16, 1901, while

appellant was digging sand to be used by said Ryan & Company in said work, instructed appellant to dig a better quality of sand in another location, where he would be under the roots of a massive stump, about six feet in diameter, and extending three feet over the place where he so directed appellant to work; that said stump was in constant danger of falling; that appellant did not know of said danger; that, while he was working where so directed, said stump did fall upon him, causing the injuries complained of. It appears that the sand pit where appellant was working and injured was not on or at Second avenue, but on Mercer street, an ungraded street, where, with the consent of the city, said Ryan & Company were obtaining sand to be used by them in said improvements. Upon trial before a jury, the trial court granted a nonsuit, and entered judgment for respondent. From said judgment, this appeal has been taken.

The theory upon which appellant bases his right of recovery is that the relation of master and servant existed between said city and himself, a relation imposing upon the city the duty to furnish him a reasonably safe place to work. On the other hand, respondent contends that Ryan & Company were independent contractors; that appellant was their employee, hired and compensated by them, and that, by reason thereof, no relation of master and servant existed between respondent and appellant. Insisting that said relation did exist, appellant contends that the city engineer had the right to superintend the work, to direct and discharge employees; and therefore that Ryan & Company were not independent contractors, within the rule exempting employers from liability for injury caused by negligence in the prosecution of the work; and cites, *Seattle v. Buzby,* 2 Wash. T. 25, 3 Pac. 180, and *Cooper v. Seattle,* 16 Wash 462, 47 Pac. 887, 58 Am. St. 46.

Neither of said cases support appellant's contention. In *Seattle v. Buzby* the question here involved was not discussed. In both cases, property of third parties, not em-

ployees of the alleged independent contractors, had been injured, as the result of negligence in making certain public improvements. It is true that in *Cooper v. Seattle* the question of independent contractor was discussed to some extent, but such discussion was not necessary to reach the final judgment, which was correct and just. No fault can be found with said final judgment, but the case itself has no bearing here.

Appellant was himself engaged in the work under a contract with Ryan & Company, and while as to third persons who might be injured, or whose property might be damaged, by reason of that work, he became the servant of the city by operation of law, yet, as between the city and himself, he was solely the servant of Ryan & Company, and not of the city. The liability of the city of Seattle to a third party, in both of said cases, existed irrespective of the question of whether or not the work was being done by an independent contractor. All that is decided in *Cooper v. Seattle, supra,* is that there was no independent contractor who sustained such a relation to the work as would release the city, under the general rule, from liability to a third person (not an employee) whose property was injured by reason of failure of the city to see that public work was performed without negligence. The learned judge who wrote the opinion cited, in support of his position, *Seattle v. Buzby, supra,* which we have already discussed, and also *Fink v. St. Louis,* 71 Mo. 52, and *Cincinnati v. Stone,* 5 Ohio St. 38. In *Fink v. St. Louis,* the court uses this language:

"The circuit court which tried the case, therefore, held that whether the city engineer did in fact superintend the work or not, it was his duty under the ordinance and charter to do so, and the city was responsible for any negligence occasioning injury to the proprietors of adjoining lots. And we think this view of the case was right and in harmony with the authorities. The action is not for damages occasioned by the tunnel, but for an excavation for a sewer,

which could only be done by consent of the city and under supervision of the city engineer. The plans for the work were submitted to the city and approved, and whether its officers supervised its execution or not, was of no consequence, since it was their duty to have done so—a duty imposed by the charter and recognized in the ordinance, and with which the state had no concern and did not attempt to interfere."

In *Cincinnati v. Stone*, the court says:·

"In addition to the fact, in this case, that the city of Cincinnati retained the entire control and direction over the work, under the contract, it was a public duty enjoined on the city to remove all nuisances from the streets of the city, and to make no contracts for the improvement of the streets by which any nuisance would be created on the premises of the adjacent proprietors; the city was, therefore, clearly liable for the injury sustained by the negligence of the contractor, or of any of his subordinates in the performance of the work."

These quotations show the theory on which *Cooper v. Seattle* was really decided.

In *Reilly v. Chicago etc. R. Co.*, 122 Iowa 525, 98 N. W. 464, the supreme court of Iowa, in a case involving the question of independent contractor, speaking of the duty of a master to furnish the servant a safe place in which to work, says:·

"The duty of furnishing plaintiff a safe place to work and exercising care and supervision to maintain such condition of safety rested upon the employer alone, and (unless it be under extraordinary circumstances, which do not here obtain) that obligation cannot be extended to include the party for whom the contractor has undertaken to perform the work. . . . This conclusion is not at all inconsistent with the rule of the cases cited by the appellant of which *Hawver v. Whalen*, 49 Ohio 69, 29 N. E. 1049, 14 L. R. A. 828; *Cameron v. Oberlin*, 19 Ind. App. 142, 48 N. E. 386; *Ohio S. R. R. v.·Morey*, 47 Ohio 207, 24 N. E. 269, 7 L. R. A. 701; and *Erickson v. R. R.*, 41 Minn. 500, 43 N. W. 332, 5 L. R. A. 786, are types. In the

*Hawver* case an independent contractor was employed to dig a ditch, which was not properly guarded for the protection of the public having the right to pass that way, and the owner was held liable to a person (not an employee of the contractor) falling into the excavation. The same rule is applied in *Cameron v. Oberlin* and *Ohio S. R. R. v. Morey.* If in these cases the persons injured had been employees of the contractor, and had received their injury in the course of their employment by reason of the negligence of the contractor, we think no one would claim that the municipality, corporation, or other party letting the contract could be held liable in damages. These authorities go no further than to hold that no person or municipality charged by law with the duty of keeping a street or other place in safe condition for public use can escape responsibility for neglect of that duty by showing that an independent contractor is primarily at fault."

In *Covington etc. Bridge Co. v. Steinbrock,* 61 Ohio St. 215, 55 N. E. 618, 76 Am. St. 377, the supreme court of Ohio says:

"The weight of reason and authority is to the effect that, where a party is under a duty to the public, or third person, to see that work he is about to do, or have done, is carefully performed so as to avoid injury to others, he cannot, by letting it to a contractor, avoid his liability, in case it is negligently done to the injury of another. . . . It is the danger to others, incident to the performance of the work let to contract, that raises the duty, and which the employer cannot shift from himself to another, so as to avoid liability, should injury result to another from negligence in doing the work."

The above quotations state the correct principle in *Cooper v. Seattle, supra,* which case is therefore not controlling here, appellant being an employee of the alleged independent contractors.

If Ryan & Company were independent contractors, the relation of master and servant did not exist between respondent and appellant. Were they such independent contractors? Appellant contends not, because the city engineer,

according to appellant's construction of the above quoted stipulations of the contract, had authority to superintend the work and to direct and discharge employees. We do not think he personally had any right to direct or to discharge. His orders were to be given to the contractors or, in their absence, to the superintendent or overseer having immediate charge of the work. The engineer had no right to order any individual employees of Ryan & Company to work either here or there. Their orders came from the contractors, superintendent, or overseer. Again, he could not discharge employees; all he could do was to make a requisition for such discharge, under certain conditions. The contract did not contemplate that he should have control of employees. Conceding, however, that the engineer had all the authority contended for by appellant, yet Ryan & Company were independent contractors. They had full control of the mode and manner of doing the work, selected their own materials, and employed and paid their own help; and they represented their employer, the city, as to the results of the work, and not as to the means by which it was to be accomplished.

"Generally speaking, an independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished. The word 'results,' however, is used in this connection in the sense of a production or product of some sort, and not of a service. . . . A reservation by the employer of the right by himself or his agent to supervise the work for the purpose merely of determining whether it is being done in conformity to the contract does not affect the independence of the relation."
16 Am. & Eng. Ency. Law (2d ed.), 187-188.

See, also, *Casement v. Brown*, 148 U. S. 615, 13 Sup. Ct. 672; *Rogers v. Florence R. Co.*, 31 S. C. 378, 9 S. E. 1059; *Erie v. Caulkins*, 85 Pa. St. 247, 27 Am. Rep. 642; *Kelly v. Mayor*, 11 N. Y. 432.

In *Casement v. Brown,* Justice Brewer says:

"Obviously, the defendants were independent contractors. The plans and specifications were prepared and settled by the railroad companies; the size, form and place of the piers were determined by them, and the defendants contracted to build piers of the prescribed form and size and at the places fixed. They selected their own servants and employees. Their contract was to produce a specified result. They were to furnish all the material and do all the work, and by the use of that material and the means of that work were to produce the completed structures. The will of the companies was represented only in the result of the work, and not in the means by which it was accomplished. This gave to the defendants the status of independent contractors, and that status was not affected by the fact that, instead of waiting until the close of the work for acceptance by the engineers of the companies, the contract provided for their daily supervision and approval of both material and work. The contract was not to do such work as the engineers should direct, but to furnish suitable material and construct certain specified and described piers, subject to the daily approval of the companies' engineers. This constant right of supervision, and this continuing duty of satisfying the judgment of the engineers, do not alter the fact that it was a contract to do a particular work, and in accordance with plans and specifications already prepared. They did not agree to enter generally into the the service of the companies, and do whatsoever their employers called upon them to do, but they contracted for only a specific work. The functions of the engineers were to see that they complied with this contract—'only this, and nothing more.' They were to see that the thing produced and the result obtained were such as the contract provided for. *Carman v. Steubenville & Indiana Railroad Company,* 4 Ohio St. 399, 414; *Corbin v. American Mills,* 27 Conn. 274; Wood on Master and Servant, 610, § 314."

The above authorities, and many others which might be cited, support the conclusion that Ryan & Company were not removed from the category of independent contractors by reason of the right of superintendence in the city en-

gineer. On the other hand, conceding to him the right to discharge employees of Ryan & Company, still they were independent contractors. *Rogers v. Florence R. Co., supra; Hobbit v. London etc. R. Co.,* 4 Exch. 253; *Cuff v. Newark etc. R. Co.,* 35 N. J. L. 17, 10 Am. Rep. 205. In *Hobbit v. London etc. R. Co.,* the court says:

"Our attention was directed during the argument to the provisions of the contract, whereby the defendants [the Railway Company] had the power of insisting on the removal of careless or incompetent workmen, and so it was contended they must be responsible for their non-removal. But this power of removal does not seem to us to vary the case. The workman is still the servant of the contractor only, and the fact that the defendants might have insisted on his removal if they thought him careless or unskilful, did not make him their servant."

Under the above authorities, we are clearly of the opinion that Ryan & Company, were as to this appellant, independent contractors, and that the relation of master and servant existed between them and appellant, instead of existing between respondent and appellant. This being true, the doctrine of *respondeat superior* cannot be applied to respondent, and it is not liable to appellant in this action. We find no error in the record. The judgment is affirmed.

MOUNT, C. J., RUDKIN, HADLEY, and DUNBAR, JJ., concur.

ROOT, J., being disqualified, took no part.