[No. 9727. Department One. May 24, 1912.]

## Westley A. Bowen *et al.*, *Respondents*, v. R. C. Smyth *et al.*, *Appellants*.[1]

Master and Servant—Relation—Subcontractor as Independent Contractor—Safe Place to Work. Where the plastering of a schoolhouse was sublet to one who agreed to furnish all the labor and materials and who had full control of the work, he was an independent contractor, and the relation of master and servant does not exist between his employees and the principal contractor, who therefore does not owe them the duty to furnish a safe place to work.

Master and Servant—Acts of Servants—Injuries to Third Persons—Negligence—Dangerous Premises—Scaffolds — Independent Contractors. The principal contractor on a building is liable for injuries sustained by employees of an independent subcontractor through the fall of a scaffold, built for the joint use of both contractors, and which the subcontractor had reinforced and made safe, where the same was, by negligent alterations of employees of the principal contractor, made unsafe without giving adequate notice of the alterations to the employees who were to use it.

[1]Reported in 123 Pac. 1016.

MASTER AND SERVANT—FELLOW SERVANTS—EMPLOYEES OF DIFFER-
ENT MASTERS. There is no relation of fellow servant between in-
jured plasterers employed by an independent subcontractor, and car-
penters employed by the principal contractor, who negligently al-
tered a scaffold prepared for the plasterers.

DAMAGES—EXCESSIVE VERDICT. In an action for personal injuries,
the plaintiffs are entitled to an allowance for pain and suffering in
addition to their actual money losses.

Appeal from a judgment of the superior court for King
county, Gay, J., entered February 25, 1911, upon findings
in favor of the plaintiffs, in consolidated actions for personal
injuries sustained in the fall of a scaffold, after a trial to the
court. Affirmed.

*James B. Murphy,* for appellant Anderson-Power Con-
struction Company.

*William M. Watson,* for respondents.

FULLERTON, J.—On July 28, 1908, the appellant Ander-
son-Power Construction Company entered into a contract, in
writing, with the proper authorities of Seattle school dis-
trict No. 1, by the terms of which it agreed to erect for the
use of the district a high school building. In March, 1909,
the construction company sublet the work of lathing and
plastering the building to the defendant R. C. Smyth. This
subcontract was also in writing, and by its terms Smyth
agreed to furnish all the labor and material necessary to a
successful performance of the work undertaken by him. As
the work on the building progressed, the appellant found it
necessary to erect a scaffold in a room of the building called
the assembly room, for the use of its carpenters. This was
a large room, and to construct the scaffold entailed consider-
able labor and some expense. As Smyth would need a scaf-
fold in the room later, the appellant's foreman approached
the foreman of Smyth and proposed that the scaffold be
erected by the appellant and Smyth jointly, each bearing
one-half of the expense. This proposition was assented to,

and carpenters were immediately put to work thereon and the scaffold completed. As erected, the posts or uprights reached within three feet of the walls of the building, and stood flush thereto; the scaffold itself practically covering the entire room. As constructed, it seems to have been a reasonably substantial structure. After its completion, the appellant's carpenters used it until they completed the work the scaffold was constructed to enable them to perform. The defendant Smyth was then notified by appellant's foreman that its carpenters were done with the scaffold, and it was suggested that he have it examined before he made use of it. Smyth thereupon sent his carpenters to examine it and reenforce it in any place they thought it necessary. This the carpenters did, completing their work in due time.

At one end of the assembly hall, a platform or stage had been constructed, elevated somewhat from the common level of the floor. The plans of the building required the installation at the rear of this stage of some large ventilating pipes, and the construction of some anterooms. After Smyth's carpenters had completed the work of reinforcing the scaffold, the appellant's carpenters returned and proceeded to install the pipes and construct the rooms. In order to have space to do the work, they cut off the outside row of uprights to a height sufficient to allow the construction of the anterooms, for a distance of some thirty-three feet along the wall, and moved the several uprights back therefrom about four feet from their original position, where they were reset and used again to support the upper part of the scaffold. The work of resetting the uprights was carelessly and negligently performed. Some of the posts were left in a slanting position, some were placed on an insecure foundation, an insufficient number of boards and countersupports were used, and such as were used were insufficiently nailed. Some four days later, Smyth's plasterers, among whom were the respondents, reached the room in the course of their work and were put to work at a place where they were obligated to make use

of that part of the scaffold directly over the place where the alteration was made. They had hardly more than begun their work when the scaffold gave way, throwing them from the top of the scaffold to the floor below. The fall caused them painful and lasting injuries. Each of the respondents began actions against Smyth and the Anderson-Power Construction Company to recover for the injuries suffered. The cases were consolidated and tried as one action in the court below, and resulted in judgments in favor of the respondents against both Smyth and the Anderson-Power Construction Company. The latter company appeals.

Taking up the contentions of the appellant in the order in which it presents them, we think the appellant correctly contends that, by the terms of the original contract between Smyth and the appellant, Smyth was an independent contractor. He agreed to furnish all the labor and materials and do the lathing and plastering on the building according to the plans and specifications adopted for the building, and to the satisfaction of the supervising architect. He had full control of the mode and manner of doing the work and represented the employer only as to the results of the work, and not as to the means by which it was to be accomplished. This made him an independent contractor under the rule of *Engler v. Seattle*, 40 Wash. 72, 82 Pac. 136. His employees were, therefore, in no sense the employees of the appellant, and the appellant is not responsible for their injuries on the principle that it had, as their master, failed to furnish them with a reasonably safe place in which to work.

But we cannot agree with the contention that it follows from this principle that there is no liability at all upon the appellant. On the contrary, the appellant was obligated not to do anything negligently or wantonly that would cause injury to the employees of Smyth. It owed to them the same duty that it owed to mankind generally, the duty not to be guilty of any negligent act of commission or omission that

was liable to cause them an injury. When, therefore, the appellant, in the furtherance of its own purposes, changed and altered the scaffold in question, which it knew Smyth had prepared for the use of his own workmen, it owed the duty of seeing to it that it was left in a reasonably safe condition, for the uses for which it was intended, or at least, in as good condition as it was prior to the time it made the alterations. To do less was negligence, and it is liable to any one injured because of such negligence.

It is said that Smyth knew of the alterations prior to the time he allowed his workmen to go upon the scaffold, but if this were true it does not relieve the appellant. After altering the scaffold, and leaving it in an unsafe condition, the appellant was obligated, in order to relieve itself from responsibility for its acts, to give notice of its dangerous condition in such a manner that any one having the right to use the scaffold could know of such dangerous condition. Mere knowledge of the alteration does not carry notice with it that the alteration was negligently made. We are aware that the appellant argues that Smyth was warned against using the scaffold without repairing it. But we do not so read the record. The witness testifying in the place in the record to which we are cited does not state the time when the warning was given to which he testified, but it is made clear elsewhere that he was testifying to the time the appellant's carpenters first left the scaffold, not to a time subsequent to its alteration. Heeding this first admonition, Smyth did have his carpenters go over the scaffold and strengthen it in all places where it was thought to need strengthening, but there is nothing in the record to indicate that he was warned a second time.

There was no relation of fellow servant between the injured plasterers and the carpenters who made the alterations in the scaffold. Conceding Smyth to be an independent ontractor, his servants and the appellant's· servants were

not servants of the same master; and without that fact existing, the relation of master and servant cannot exist.

It is objected that the damages allowed are excessive. But while the allowances look liberal, in the light of the record, we are unable to say that they are so much so as to warrant interference on our part. The injured plaintiffs fell from a considerable height, and the shock was great notwithstanding they seem to have escaped without broken bones. They were masters of their trade, able to command high wages, and were deprived of their ability to work for a considerable time, and none of them had fully recovered at the time of the trial. In addition to an allowance for their actual money losses, they were entitled to an allowance for the pain and suffering the fall caused them.

We find no error in the record, and the judgment will stand affirmed.

DUNBAR, C. J., MOUNT, PARKER, and GOSE, JJ., concur.