William Beers, Plaintiff-Appellee, v. Indianapolis Forwarding Company, a Corporation, and Harwood Trucking, Inc., a Corporation, Defendants-Appellants.
William O. Beers, Administrator of the Estate of Mary E. Beers, Deceased, Plaintiff-Appellee, v. Indianapolis Forwarding Company, a Corporation, and Harwood Trucking, Inc., a Corporation, Defendants-Appellants.

Gen. Nos. 48,924, 48,925.

First District, First Division.

October 14, 1963.

Vogel & Vogel, of Chicago (L. H. Vogel, R. C. Vogel and Dom J. Rizzi, of counsel), for defendant-appellant Harwood Trucking, Inc., and Heineke, Conklin & Schrader, of Chicago (William H. Schrader and Edwin A. Strugala, of counsel), for defendant-appellant Indianapolis Forwarding Company.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (John M. Moelmann, Richard G. French and Thomas J. Weithers, of counsel), for plaintiff-appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The two actions before us were tried as consolidated cases and have also been consolidated for purposes of appeal. The first case was brought by plaintiff, William Beers, to recover damages for loss of consortium, and medical and hospital expenses he incurred as a result of injuries to his wife in an Indiana highway

collision on March 20, 1952, and for burial expenses from her subsequent death in Illinois on July 20, 1953. The second case was brought in plaintiff's capacity as the administrator of his wife's estate to recover damages for her wrongful death. There are two defendants, namely, Indianapolis Forwarding Company [Indianapolis], and Harwood Trucking, Inc. [Harwood]. The jury found both defendants negligent by its verdict awarding $19,000 to plaintiff, individually, and $15,000 in the wrongful death action and both defendants appeal from the judgments entered upon the verdicts.

Sidney R. Perryman owned and operated a restaurant in Louisville, Kentucky, and also owned six truck tractors and trailers which he leased together with his drivers to various trucking companies. On March 19, 1952, Perryman entered into a written lease agreement separately with defendants Indianapolis and Harwood in which agreement each defendant leased from Perryman a tractor trailer unit to ship their merchandise from Louisville to Chicago. Perryman was paid by the load ton. As provided in the respective leases the driver who hauled the Indianapolis merchandise was Marvin Resinger and the Harwood driver was Robert L. Boling. Both drivers were employees of Perryman who paid them their salaries on a mileage basis and who also supplied the gas and oil for the trips. In the course of their respective trips Boling met Resinger at Reno's Truck Stop in Schneider, Indiana. At that time Boling told Resinger he was having trouble with the starter on the tractor he was driving. They decided to switch trailers because at Boling's destination there would be seven or eight trucks in front of him and he would have to wait all day and leave the tractor running because of the faulty starter. As a result of this exchange, Boling continued to use his tractor, but

306

was hauling the Indianapolis merchandise to its destination instead of hauling Harwood's merchandise.

When the drivers switched trailers, they exchanged bills of lading and permits which were issued to Indianapolis and Harwood respectively. Defendants Harwood and Indianapolis were common carriers by motor truck, operating pursuant to certificates of public convenience and necessity issued by Interstate Commerce Commission. Both also were certificated for the purposes of intrastate motor truck carriage by the State of Indiana. Perryman does not obtain the bills of lading and operates under other company's permits.

As Boling was driving toward the Indianapolis Forwarding Company destination, approximately one mile north of Schneider, Indiana, on U. S. Highway 41, the collision which resulted in this cause of action occurred. Boling was driving over a dip between a concrete bridge and the highway when the trailer and tractor separated. The tractor went to the left side of the highway, crossed over the center line, and struck the automobile in which plaintiff's wife was riding, inflicting serious injuries which caused her death 16 months later.

Defendant Harwood contends that the plaintiffs failed to prove that Boling was their agent and therefore the court erred in denying its motion for directed verdict. Harwood argues that at the time of the accident Boling was not operating under the Harwood trip lease, not operating under Harwood's franchise, not hauling Harwood merchandise, not headed for a Harwood destination and therefore they were not liable on any basis and a judgment notwithstanding the verdict should be entered in its favor.

Defendant Indianapolis contends that under the lease agreement between Perryman and themselves, Resinger was their agent and servant and that as a

307

matter of law Boling was a volunteer whose employment they did not accept and was not their agent and servant and therefore the court erred in denying its motion for directed verdicts. It is further contended by Indianapolis that burial expenses were erroneously allowed.

■ Since the occurrence in question took place in the State of Indiana, that law governs as to the substantive rights and liabilities of the parties. ILP Torts § 6; 16 ILP Death § 15; see also, generally, 16 Am Jur Death § 390.

The basic rule of law upon which the liability of each defendant is predicated is stated in Section 428 of the Restatement of the Law of Tort:

> An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.

■ Negligence in the operation of the truck trailer and plaintiff's due care are not disputed. The liability of Perryman is not in issue before us. The sole question presented is whether Harwood or Indianapolis or both are responsible for plaintiff's injuries. The Supreme Court of Indiana in the case of Bates Motor Transport Lines v. Mayer, 213 Ind 664, 14 NE2d 91, wherein appellant also contended that there was no evidence that the driver and operator of the truck was a servant, agent or employee of appellant made the following statement, which we think is applicable here:

> . . . [t]he appellant was the common carrier, licensed under the laws of Indiana . . . There is

no question as to the ownership of the truck . . . [t]hat is not a question in the case. The question is: Whose business was being transacted? Who was the common carrier? Who held the permit from the Public Service Commission of Indiana? . . . [t]he appellant furnished the permit to transport interstate shipments as a common carrier and furnished the freight to be transported . . . [t]he appellant was the responsible licensed party to use the highways of the state, in an enterprise necessarily attended by some danger. It cannot avoid liability for injury to third parties by contracting with an irresponsible party. Such contract would be a fraud upon the public and state. Lake Shore & Michigan Railway Co. v. Foster, 1885, 104 Ind 293, 4 NE 20, 54 Am Rep 319.

The Circuit Court of Appeals for the Third Circuit in Venuto v. Robinson, 118 F2d 679, reviewed a judgment upon a verdict wherein the appellant contended there was insufficient evidence to establish that the owner of a truck who was hauling a load of merchandise for a common carrier pursuant to its permit was its servant at the time of the accident and that the trial court erred in denying its motion for directed verdicts had this to say:

Inter-state motor carriage is now regulated by elaborate rules and regulations set out in the Motor Carrier Act of 1935 and the regulations thereunder. The carriage of freight in high powered motor vehicles on public highways is certainly business attended with very considerable risk. The rule stated has been applied in cases against railroads to hold a lessor railroad liable even where the relationship has been lessor and lessee without even general control or direction

by the lessor over the lessee. See annotation, 28 ALR 122, and following. The application to one employed by a common carrier by motor truck upon the public highways is an even clearer case. See Duncan v. Evans, 1938, 134 Ohio St 486, 17 NE2d 913, affirming Duncan v. Evans, 1937, 60 Ohio App 265, 20 NE2d 729. Bates Motor Transp. Inc. v. Mayer, 1938, 213 Ind 664, 14 NE2d 91.

Defendant Indianapolis contends that the trial court erroneously instructed the jury that if they should find any negligence on the part of the operator of the tractor-trailer unit, that both Indianapolis and Harwood were jointly and severally responsible in law for such negligence. Indianapolis insists that this issue should have been submitted to the jury.

The facts are undisputed that Indianapolis had leased a trailer truck from Perryman to ship its merchandise exclusively to a terminal designated by Indianapolis. The lease provided that, ". . . during the term of this lease, the foregoing equipment shall be subject to direction and control of the Indianapolis Forwarding Co., and shall be operated only by the lessor or his representative while in the employ of Indianapolis Forwarding Co." It is clear from the evidence that at the time of the accident the trailer involved was leased to Indianapolis and contained its merchandise which was being transported on the highways pursuant to a bill of lading and an Indianapolis permit secured by it. In addition the decals granted to Indianapolis by the Commerce Commission were on the trailer at the time of the accident.

The appellant Indianapolis argues that it cannot be held liable for the negligent acts of Boling. They claim that Resinger was the only agent sanctioned by them and that Boling was a mere volunteer whose actions can impose no liability upon them. We do not agree. Resinger, Indianapolis' servant and

310

agent permitted Boling to haul the Indianapolis merchandise in the Indianapolis leased trailer, under the Indianapolis permit. Both Resinger and Boling initially were employees of Perryman. There is no specification in the lease that Resinger and Resinger alone, would operate the vehicle. The change of tractors and drivers was arranged en route between the two drivers leased to defendants and was not done in frolic, but in the interest of efficient performance. It is as if Resinger had become ill and Boling had taken his place at the wheel. Indianapolis seeks to remove the nondelegable duty imposed upon a common carrier of freight operating under a public franchise and as we have indicated it cannot be permitted to escape its duty or responsibility to the public. Restatement of the Law of Tort, Section 428; Venuto v. Robinson, 118 F2d 679; Bates Motor Transp. Lines v. Mayer, 213 Ind 664, 14 NE2d 91; Louis v. Youngren, 12 Ill App2d 198, 138 NE2d 696. There is no showing that Indianapolis relied, when making the contract with Perryman, on the particular skill of Resinger, and thus those cases in which a principle's tort responsibility is terminated by a change of parties, or unconscionable delegation of duties, are not applicable. One of the principal purposes, if not the primary purpose, of the regulatory laws in the field of high speed interstate trucking is for the protection of the travelling public upon the highways. Hodges v. Johnson, DCWD Va, 52 F Supp 488. Under the circumstances presented in this case, it was the duty of the trial court to instruct the jury that the acts of the operator were imputable to Indianapolis. See Gassaway v. Barry, 123 F Supp 670. In affirming the holding of the trial court that the lessee was liable for the acts of the operator as a matter of law the Circuit Court of Appeals for the third circuit, in the case of Mellon National Bank & Trust Co. v. Sophie Lines, Inc., 289 F2d 473 stated on page 476:

311

So we have that at the time and place of the accident the truck was under a lease which put exclusively possession, use and control during the thirty day period in Turner. Without the lease, at the moment of the accident the truck had not even a semblance of excuse to be on the road. There was a copy of the lease in the cab of the truck as required by ICC Rules Ex Parte MC–43, 207.4(7). In addition Turner decals were on the cab together with the Turner ICC permit number and no receipt showing termination of the lease had been given by Sophie Lines to Turner.

As we view the evidence both Harwood and Indianapolis the lessees of the trip lease were common carriers, each operating under its own franchise on interstate highways which rendered each responsible for the equipment leased to it. See Section 428 of the Restatement of Torts. Harwood's lease agreement provided that the lessee in part, ". . . (d) agrees, during the term of this agreement, to assume full responsibility for the operation of such motor vehicle." The tractor unit involved in the accident was the same one for which Harwood by the above quoted language had agreed to assume "full responsibility." The assumption of "full responsibility" certainly includes responsibility for the acts which were done at Reno's Truck Stop. When Boling and Resinger switched trailers each one did his own coupling and generally co-operated in the changeover. They combined their resources and services. Harwood having shipped its merchandise on the highway into interstate commerce and having agreed to assume "full responsibility" for it cannot escape liability for acts which as a result of these circumstances became its own. Under these circumstances neither Harwood nor Indianapolis will be permitted to delegate its duty

312

or responsibility to the public. See Louis v. Youngren, 12 Ill App2d 198, 138 NE2d 696. Where two or more persons participate in the commission of a tort, each is liable for the entire damage. City of Indianapolis v. Lee, 76 Ind App 506, 132 NE 605. The Appellate Court stated:

> [i]t is generally held that where a servant, without express or implied authority from the master, suffers or permits a stranger to do, or to assist in doing, the work which the master intrusted to the servant, the master is liable under the rule of respondeat superior for an injury to a third person inflicted through the tortious act of the stranger.

Since Resinger, Indianapolis' servant, permitted Boling to haul the Indianapolis merchandise in the Indianapolis trailer, under the Indianapolis permit, the acts of Boling were the acts of Indianapolis. Nor can Harwood escape its liability since the tractor for which it had agreed to assume liability was operated by Boling, its lease driver at the time of the occurrence.

██ Finally Indianapolis contends that the court erred in permitting a cancelled check evidencing a payment of $732.75 for burial expenses to be introduced as an exhibit. Under the judicial interpretation of the Indiana death statute (Burns' Ind Ann Stat § 2–404), burial expenses are not recoverable by the personal representative. However, in addition to the wrongful death action which was brought by plaintiff in his representative capacity, plaintiff also sued for the loss of consortium and for funeral expenses incurred by him. As pointed out by plaintiff's counsel, defendant, Indianapolis cites no Indiana cases holding that one spouse cannot recover burial expenses when the spouse brings such an action in an individual capacity, as opposed to an action as Executor.

However, the Indiana cases do hold to the proposition that there is a common-law duty upon a husband to pay for the funeral expenses of his wife. Rocap v. Blackwell, 79 Ind App 232, 153 NE 515; Kirtman v. Gallentine (1960 Ind App) 169 NE2d 1. In Heuer v. Loop, SD Ind, 198 F Supp 546 the District Court said, "neither the death of the wife nor the Wrongful Death Act abate the common-law right of action in a husband for loss of services and consortium and for sums expended for medical expenses prior to her death . . . that the cause of action for loss of services, etc., prior to the wife's death, did not abate at the death of the wife, nor does the Wrongful Death Act supplant that action."

We must also observe that the judgment in the cause of action brought by the husband plaintiff in his individual capacity was in the round figure of $19,000. It is impossible to conclude that the contested amount of $732.75 was definitely awarded to plaintiff by the jury verdict. None of the plaintiff's instructions directed the jury to consider burial expenses as an element of damages. More important the post-trial motion of Indianapolis did not as is required bring this specific allegation of error to the trial court's attention. Paragraph 20 of Defendant Indianapolis' motion generally states, "[t]he Court erred in admitting in evidence, over objection of counsel for this defendant, incompetent, irrelevant, immaterial and inadmissible evidence offered by plaintiff." Paragraph 21 complains that, "[t]he Court erred in admitting into evidence over the objection of counsel for this defendant bills and statements for alleged hospital, medical, nursing and other care marked 'plaintiff's Exhibits 10 through 39' for the reason *that sufficient foundation for introduction of those alleged exhibits were not laid.*" (Emphasis supplied.) Paragraph 30 complains, "[t]he Court erred

314

in permitting counsel for plaintiff to argue to the jury over objection three separate alleged causes of action for damages, whereas, in law, damages for alleged medical and hospital care and for funeral expense *must properly have been included as part of the elements of damage in plaintiff's alleged action for wrongful death.*" (Emphasis supplied.) We conclude that no opportunity was given to the trial court to rule upon this contention and that therefore such question has not been properly preserved for the consideration of this court.

Various other grounds are urged for reversal, but in the view we take we do not consider it necessary to pass upon them.

For the reasons stated the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

ENGLISH, PJ and MURPHY, J, concur.