[No. 46952-1.    En Banc.    October 15, 1981.]

ALICE MARIE TAUSCHER, as *Personal Representative, Appellant,* v. PUGET SOUND POWER AND LIGHT COMPANY, ET AL, *Respondents.*

Lucas, Glase & Chicoine and James D. Sherman, for appellant.

Perkins, Coie, Stone, Olsen & Williams, Charles C. Gordon, Jane Noland, Aiken, St. Louis & Siljeg, and Charles E. Siljeg, for respondents.

DIMMICK, J.—This case involves a wrongful death action brought by the estate of an employee of an independent contractor against an electric company. At issue is whether a public utility owes a nondelegable duty to employees of the utility's independent contractors to take reasonable precautions against work which is inherently dangerous or to ensure compliance with the safety mandates of statutes and administrative rules. The trial court found no such duty and granted summary judgment on the pleadings in favor of Puget Sound Power and Light Company (Puget Power). We affirm.

In July of 1978, Potelco, Inc. (Potelco) contracted with respondent Puget Power to perform certain work for Puget Power. The work was designated as the White River to Olympia 55 KV Rebuild (White River Rebuild). Potelco assigned apprentice lineman Steven Shaw to work on the

White River Rebuild along with foreman Ray Matheson and fellow journeyman Rod Johnston as part of a 4-man crew.

On September 1, 1978, the date of the accident, Shaw had climbed a telephone pole using climbing apparatus, and was connecting copper wire between the energized high voltage lines above him and an apparatus attached to the pole known as a "cut out". He was alone on the pole, working within 2 feet of the energized high voltage line without any protective barriers to cover and insulate the line in violation of safety rules. In addition, although an apprentice, Shaw was performing a journeyman's task and was without adequate supervision. Johnston was working at the next pole north, but was in an insulated bucket rather than using climbing apparatus. Matheson and a fourth member of the crew were on the ground at or between the two poles. While alone on his pole, and within 2 feet of the energized high voltage lines, Shaw, while handling some copper wire sent up to him from the ground, came in contact with the high voltage line and was electrocuted.

Shaw's mother, plaintiff/appellant Alice M. Tauscher, acting in the capacity of personal representative of her son's estate, brought a wrongful death suit against respondent Puget Power, decedent's union, and Rod Johnston. Since the workers' compensation act limited the liability of Potelco, it was not made a defendant. However, by subrogation contract with defendant, Potelco was made a third party defendant. Only claims against Puget Power will be discussed as the summary judgment applied only to it.

Tauscher alleged that Puget Power violated statutory and common law duties owed by respondent to Shaw, which were the proximate cause of Shaw's death. Specifically, appellant alleged that Puget Power owed Shaw a nondelegable duty to insure that safety requirements were complied with on the basis of (1) the inherently dangerous nature of Shaw's work, (2) the provisions in RCW 19.29-.010, RCW 80.28.010, and WAC 296–45, and (3) the fact that Puget Power was a public franchise. Appellant further

contended that the safety provisions were violated and that the violations led to Shaw's death. Appellant made no allegations that Puget Power was negligent in hiring Potelco, that Puget Power maintained any control over the work site, or that there were any physical defects in Puget Power's equipment or the work site. In response, Puget Power claimed that appellant failed to state a cause of action on any theory against it, and that the proximate cause of the death of Shaw was through either his own negligence, or that of others not under Puget Power's control.

## I

The common law rule is that one who engages an independent contractor is not liable for injuries to employees of the independent contractor resulting from the contractor's work. *Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 94, 549 P.2d 483 (1976); *Seattle Aerie 1 v. Commissioner,* 23 Wn.2d 167, 171–72, 160 P.2d 614 (1945); *Bowen v. Smyth,* 68 Wash. 513, 123 P. 1016 (1912); *Campbell v. Jones,* 60 Wash. 265, 267, 110 P. 1083, 20 A.L.R. 671 (1910); W. Prosser, *Torts* § 468 (4th ed. 1971). Courts have recognized exceptions based on common law, statute and contractual assumption of duty. *Kelley v. Howard S. Wright Constr. Co.,* 90 Wn.2d 323, 582 P.2d 500 (1978). Appellant argues that Puget Power was liable for the death of Shaw based on the existence of several of these exceptions to the common law rule.

The decisions of this court have recognized the liability of the employer of an independent contractor to third persons injured by the negligence of the contractor in the performance of work of an inherently dangerous nature. *See Epperly v. Seattle,* 65 Wn.2d 777, 781, 399 P.2d 591 (1965); *Kendall v. Johnson,* 51 Wash. 477, 481, 99 P. 310 (1909). *See also Engler v. Seattle,* 40 Wash. 72, 82 P. 136 (1905). In the present case the issue is whether the liability in such cases extends to the employees of an independent contractor.

■ Appellant cites to *Kelley* as standing for that proposition. This reliance on *Kelley* is misplaced. In *Kelley,* an ironworker's guardian ad litem sued a construction site general contractor after the worker fell 29 feet from a beam on which he was working. Our decision, holding Howard S. Wright Construction Company liable was primarily based on the fact that Howard S. Wright, as the general contractor on a multi–employer project, retained control over the common work area and thus had the duty, within the scope of that control, to provide a safe place to work for all employees. *Kelley, supra* at 332–33. We did, however, recognize three other exceptions to the general rule of nonliability, including liability based upon the existence of inherently dangerous work. Without analyzing the inherently dangerous exception or Washington case law, we concluded:

> Another ground for imposing a duty of care on Wright under the common law of tort is the inherently dangerous nature of the work respondent Kelley was doing. When work by its very nature creates some peculiar risk of injury, and the general contractor has reason to know of the inherent hazards of the work, the general contractor has a duty to take reasonable precautions against those hazards.

*Kelley, supra* at 332. Our landmark case of *Epperly, supra,* was not cited in the *Kelley* opinion. Appellant claims *Epperly* was overruled *sub silentio,* while respondent contends it controls in the instant case. We agree with respondent.

In *Epperly v. Seattle, supra,* a worker, Guy Epperly, died when struck by a falling cable while working on High Gorge Dam on the Skagit River. He was an employee of the contractor with whom the City had contracted to perform the work. Inspection rights were reserved to the City. The cable, which failed, was placed by the contractor, was solely under the contractor's control and not a part of the dam as it was to be completed. We held that the owner of land who hires an independent contractor to perform work thereon is

not liable for injuries to an employee of the contractor resulting from the ultrahazardous activity of the contractor because the rule that an owner has a nondelegable duty to see that the work is performed with the requisite care is for the benefit of third parties not engaged in promoting the activity.

Other jurisdictions which have faced this issue are divided over whether employers of an independent contractor owe to the employees of the contractor a nondelegable duty of care based on the presence of an inherently dangerous activity. Several jurisdictions have held that such a nondelegable duty is owed to employees of independent contractors.[1] The overwhelming number of jurisdictions which have resolved this issue have found, however, that no duty is owed by an owner to employees of an independent contractor.[2] We adhere to the rule reaffirmed in the *Epperly* case that the employer's liability does not extend to employees of independent contractors merely because of the presence of inherently dangerous activities. *Kelley* merely recognizes a possible exception when the owner or general contractor knows of inherent hazards of the work, and is in a position to protect against them. We do not

---

[1]*See Lindler v. District of Columbia*, 502 F.2d 495, 498–99 (D.C. Cir. 1974); *Van Arsdale v. Hollinger*, 68 Cal. 2d 245, 437 P.2d 508, 513–14, 66 Cal. Rptr. 20 (1968); *Giarratano v. Weitz Co.*, 259 Iowa 1292, 147 N.W.2d 824, 834 (1967); *Vannoy v. Warren*, 15 Mich. App. 158, 166 N.W.2d 486, 489 (1968); *International Harvester Co. v. Sartain*, 32 Tenn. App. 425, 222 S.W.2d 854, 868 (1948).

[2]*See Vagle v. Pickands Mather & Co.*, 611 F.2d 1212 (8th Cir. 1979), *cert. denied*, 444 U.S. 1033, 62 L. Ed. 2d 669, 100 S. Ct. 704 (1980) (applying Minnesota law); *Parsons v. Amerada Hess Corp.*, 422 F.2d 610, 614 (10th Cir. 1970) (applying New Mexico law); *Lipka v. United States*, 369 F.2d 288, 292–93 (2d Cir. 1966), *cert. denied*, 387 U.S. 935, 18 L. Ed. 2d 997, 87 S. Ct. 2061 (1967) (applying New York law); *Corban v. Skelly Oil Co.*, 256 F.2d 775 (5th Cir. 1958) (applying Arkansas law); *Sloan v. Atlantic Richfield Co.*, 552 P.2d 157, 160 (Alaska 1976); *Welker v. Kennecott Copper Co.*, 1 Ariz. App. 395, 403 P.2d 330, 339 (1965); *Florida Power & Light Co. v. Price*, 170 So. 2d 293, 298 (Fla. 1964); *King v. Shelby Rural Elec. Coop. Corp.*, 502 S.W.2d 659, 662 (Ky. Ct. App. 1973); *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271, 277 (1963); *Humphreys v. Texas Power & Light Co.*, 427 S.W.2d 324 (Tex. Civ. App. 1968); *Potter v. Kenosha*, 268 Wis. 361, 68 N.W.2d 4 (1955).

have such a factual situation before us.

Although electrical work is considered by most to be an inherently dangerous activity, it is not necessarily inherently dangerous to experienced linemen. In *Humphreys v. Texas Power & Light Co.*, 427 S.W.2d 324, 330 (Tex. Civ. App. 1968), involving an identical factual situation as the case at hand, the Texas Supreme Court wrote:

> [U]nder the circumstances here presented where it is undisputed that appellant was an experienced electrical lineman and since he fully knew, realized and appreciated the danger incident to working around energized lines, it cannot be said that the work falls in the category of being inherently dangerous as that term is generally applied. It has been held that work performed on or near electrical lines is not inherently dangerous work.

(Citations omitted.) *See also Epperly, supra* at 782; Restatement (Second) of Torts §§ 519, 523 (1965). We follow the majority of jurisdictions that have reached this question. Support for the exception to the rule on nonliability is expressed in sections 413, 414, 416 and 427[3] of the

---

[3]Section 413 of the Restatement (Second) of Torts reads:

"One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

"(a) fails to provide in the contract that the contractor shall take such precautions, or

"(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

Section 414 of the Restatement (Second) of Torts reads:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

Section 416 of the Restatement (Second) of Torts reads:

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

Restatement (Second) of Torts (1965). This exception appears to have as its basis the principle that an owner should not be permitted to shift from himself or herself liability for injuries arising out of work that is inherently dangerous by the simple expedient of entrusting that work to an independent contractor. The question left unanswered in these Restatement sections is whether the owner's liability for physical harm to others includes employees of the independent contractor.[4]

There are strong policy considerations behind limiting an owner's liability to those third parties other than employees of independent contractors. First, the rationale underlying the exception to the rule for nonliability, which is that we did not want an owner shifting his or her liability by hiring an independent contractor to perform a task, is not relevant in the case of an employee of an independent contractor. An owner who employs an independent contractor is already liable to *all* third persons, including employees of the independent contractor, for his or her own negligence,

---

Section 427 of the Restatement (Second) of Torts reads:

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

[4]Tentative Draft No. 7 of the Restatement (Second) of Torts attempted to resolve this problem. This draft contained a special note to chapter 15 (the chapter dealing with liability of employers for the conduct of independent contractors), essentially proposing that when the sections in chapter 15 "speak of liability to 'another' or 'others,' or to 'third persons,' it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included." *King v. Shelby Rural Elec. Coop. Corp.*, 502 S.W.2d 659, 662 (Ky. Ct. App. 1973).

Although this language was not contained in the Restatement as finally adopted, it does evidence an intent by the authors of the Restatement to clearly delimit the parameters of the exception. *See King; Welker v. Kennecott Copper Co.*, 1 Ariz. App. 395, 403 P.2d 330 (1965); *Sloan v. Atlantic Richfield Co.*, 552 P.2d 157 (Alaska 1976). Apparently the authors determined to allow each state to interpret the provision according to their own case law and workers' compensation statutes.

for negligence in the hiring of the independent contractor and for injuries resulting from any latent defects on the land. *See Welker v. Kennecott Copper Co.,* 1 Ariz. App. 395, 403 P.2d 330 (1965); Restatement (Second) of Torts § 343 (1965). Thus, the law already imposes upon the employer a duty of due care. The employer's liability for damage resulting from the negligence of the independent contractor is limited to third parties largely because the employer has in a sense already assumed financial responsibility for the injuries to the employees in that the contract he or she pays to the independent contractor necessarily includes the costs of the insurance premiums that the independent contractor must pay for workers' compensation coverage. *King v. Shelby Rural Elec. Coop. Corp.,* 502 S.W.2d 659 (Ky. Ct. App. 1973); *Vagle v. Pickands Mather & Co.,* 611 F.2d 1212, 1218 (8th Cir. 1979). The employee already has a remedy; one which the owner has paid for.

Secondly, under our workers' compensation statutory scheme, the employer is released from financial responsibility for on–the–job injuries to his or her employees. To hold an employer liable for injuries to employees of the independent contractor would subject the employer to a greater liability than if the employer had utilized his or her own employees. *King,* at 663; *Vagle,* at 1218; *Cochran v. International Harvester Co.,* 408 F. Supp. 598, 602–03 (W.D. Ky. 1975).

Finally, to hold otherwise would serve to encourage owners to use their own employees (who may be inexperienced) and thereby escape liability for any negligent acts and conversely, discourage owners from hiring experienced independent contractors, who specialize in hazardous work.

## II

Appellant next argues that a public utility, such as Puget Power, owes a nondelegable duty to employees of the utility's independent contractors to ensure compliance with RCW 19.29.010, RCW 80.28.010 and WAC 296–45. Accord-

ing to appellant, violations of these safety provisions was the cause of Shaw's death, and as such, Puget Power should be held liable as it failed to ensure compliance with these provisions. A statute may create the nondelegable duty of providing safeguards or precautions for the safety of "others". *See Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 582 P.2d 500 (1978); W. Prosser, *Torts* § 470 (4th ed. 1971). We find that these statutes did not specifically create such a duty in Puget Power that extended to employees of the independent contractor.

RCW 19.29.010, the first statute which appellant contends creates such a duty, reads in relevant part:

> It shall be unlawful from and after the passage of this chapter for any officer, agent, or employee of the state of Washington, or of any county, city or other political subdivision thereof, or for any other person, firm or corporation, or its officers, agents or employees, to run, place, erect, maintain, or use any electrical apparatus or construction, except as provided in the rules of this chapter.
>
> . . .
>
> Rule 32. No work shall be permitted to be done on any live wire, cable or appliance carrying more than seven hundred fifty volts of electricity by less than two competent and experienced persons, who, at all times while performing such work shall be in the same room, chamber, manhole or other place in which, or on the same pole on which, such work is being done . . .

Clearly, RCW 19.29 was designed for the safety of electrical workers. *See, e.g., Goodell v. ITT–Federal Support Servs., Inc.*, 89 Wn.2d 488, 573 P.2d 1292 (1978). As an electrical power company, Puget Power is subject to its requirements for it states in RCW 19.29.010 that its provisions are applicable to any person, corporation, or governmental body or its agents and employees who "erect, maintain, or use any electrical apparatus or construction". *See Goodell, supra* at 491–92. Potelco, as an electrical contractor is also subject to these requirements.

The statute, by its language, does not impose on Puget Power a nondelegable duty to insure compliance with

the mandates of the statute. Appellant argues that the statute does impose such a duty, and in support cites *Snyder v. Southern Cal. Edison Co.,* 44 Cal. 2d 793, 285 P.2d 912 (1955). In *Snyder,* employees of an independent contractor, employed by Southern California Edison Company, suffered injuries when a power pole, which had been negligently set by the independent contractor, fell on them. The California Supreme Court held California Edison liable for the injuries on the basis that California Edison had a nondelegable duty to see that the poles were set as required by law. (Defendant had an inspector on the job who failed to inspect.) In so holding, the court noted that the statutes were promulgated for the safety of the workmen as well as for the public. *Snyder, supra* at 801. The court reasoned that since construction and maintenance of lines, including poles, is a necessary part of the utility's business, these tasks may not be delegated without an express provision permitting such delegation. *Snyder, supra* at 801–02.

Although our statutory scheme is, in some respects, similar to that of California's, we decline to adopt the interpretation given by the California court. The California court interpreted its statutory provision in the belief "that sound social policy . . . induce[s] the courts to make further inroads upon the rule of nonliability in this class of cases." *Snyder, supra* at 800. California case law has previously extended liability in intrinsically dangerous work situations. Washington has not. *See Campbell v. United States,* 493 F.2d 1000 (9th Cir. 1974). Our policy, as articulated by legislative enactments and judicial decisions, is to not permit an employee of an independent contractor to recover from the owner of premises for torts of the contractor even when the work involved is intrinsically dangerous. *Epperly, supra.* If the legislature wished to abrogate our common law, it would have specifically done so.

Appellant also contends that WAC 296–45, which outlines safety standards for electrical workers, creates such a nondelegable duty.

WAC 296–45–65003 provides:

(1) The work for which this chapter is enacted is a specialized type of construction work and, insofar as it is specialized, such operations, procedures and work require a particular type of rule or regulation which is generally embodied within this chapter. The purpose of this chapter shall be to avoid those hazards peculiar to the industry, the purpose for which this chapter is designed, *and this chapter shall include employees and employers whose business and work include power distribution and transmission lines. The standards apply to all such construction work of an electrical nature regardless of the general nature of the business. The criterion for application of this chapter shall be the nature of the particular work to be or which is being performed.* That work which is intended to be encompassed . . . shall include that work, conditions, practices, means, operations and processes performed at or on power distribution and transmission line installations, regardless of location, . . . shall include such adjacent and supporting structures as are fairly encompassed by these regulations.

(Italics ours.) Thus the *nature* of the work, *i.e.,* electrical construction rather than the identity of the employer determines the applicability of these regulations.

Certainly, administrative rules may impose nondelegable duties as do statutes. *See* Restatement (Second) of Torts § 424 (1965). But, there is no language in WAC 296–45 which even intimates that public utilities must guarantee that employees of independent contractors comply with the safety standards of WAC 296–45. In fact, the language of WAC 296–45–65003(9) further militates against such a conclusion:

Neither the promulgation of these rules, nor anything contained in these rules shall be construed as affecting the *relative status* or civil rights *or liabilities* between employers and their employees and/or the employees of others and/or the public generally; *nor shall the use herein of the words "duty" and "responsibility" or either, import or imply liability other than provided for in the industrial insurance and safety laws of the State of Washington, to any person for injuries due to negligence predicated upon failure to perform or discharge any such "duty" or responsibility,"* . . .

(Italics ours.)

■ The language of this regulation specifically indicates that all employers engaged in this work must comply with these regulations. The respondent contends that had the legislature, through the Department of Labor and Industries, intended to place a nondelegable or absolute duty per se upon electrical utilities, over and above other employers, the regulations would have so stated. Ordinary rules of statutory construction preclude rewriting the clear language of a statute. *King County v. Seattle*, 70 Wn.2d 988, 425 P.2d 887 (1967). We agree.

Appellant next contends that RCW 80.28.010 also creates such a nondelegable duty. RCW 80.28.010 reads:

> Duties as to rates, services, and facilities. All charges made, demanded or received by any gas company, electrical company or water company for gas, electricity or water, or for any service rendered or to be rendered in connection therewith, shall be just, fair, reasonable and sufficient.
>
> Every gas company, electrical company and water company shall furnish and supply such service, instrumentalities and facilities as shall be safe, adequate and efficient, and in all respects just and reasonable.
>
> All rules and regulations issued by any gas company, electrical company or water company, affecting or pertaining to the sale or distribution of its product, shall be just and reasonable.
>
> Every gas company, electrical company and water company shall construct and maintain such facilities in connection with the manufacture and distribution of its product as will be efficient and safe to its employees and the public.

As its title indicates, this provision applies to service–related matters rather than to construction practices which are covered by RCW 19.29.010 and WAC 296–45, previously discussed. Appellant has not alleged any defect in Puget Power's service, instrumentalities or facilities. Therefore, reliance on this provision is not in point.

## III

■ Finally, plaintiff contends that Puget Power owes a nondelegable duty to ensure compliance with safety provisions based on the fact that Puget Power is a public franchise. In support, plaintiff cites to section 428 of the Restatement (Second) of Torts.[5] This reliance is misplaced in that the rationale behind the Restatement rule is to guarantee protection to the public. The employee of an independent contractor is not within the class to be benefited or protected by the franchise. *See generally Beers v. Indianapolis Forwarding Co.,* 43 Ill. App. 2d 303, 193 N.E.2d 473, 477–78 (1963).

In sum, when an owner is operating under a public franchise, or when a statute imposes a duty, or in inherently dangerous situations, an owner cannot delegate his or her duty of care toward "others" to an independent contractor and escape liability. Employees of an independent contractor, however, are not in the protected class of "others". There are exceptions to this rule of nonliability when the owner retains control over the work place, is personally negligent, is negligent in hiring the independent contractor, or fails to warn of latent defects in the work place. The general contractor hired by an owner, by contract can have a higher duty of care to the subcontractors' employees on a multi–employer jobsite, when the general contractor retains control over the jobsite. None of the exceptions to the rule of nonliability is present in the case at bench.

---

[5]The text of section 428 of the Restatement (Second) of Torts reads:

"An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."

We affirm.

BRACHTENBACH, C.J., and STAFFORD, UTTER, and HICKS, JJ., concur.

ROSELLINI, J. (dissenting)—The negligence of the independent contractor borders on gross negligence. "An uninsulated high voltage power line carrying a deadly current must be considered one of the most dangerous contrivances known to man." *Black v. Public Serv. Elec. & Gas Co.*, 56 N.J. 63, 72, 265 A.2d 129, 133 (1970).

An energized high voltage line, under proper atmospheric pressure, will arc anywhere from 10 to 12 feet and strike any metal object within the arc.

Steve Shaw, on September 1, 1978, was an apprentice with the independent contractor. He was permitted to climb a power pole on which there were high voltage energized lines. Shaw was working within 2 feet of the high voltage lines without any protective barrier being used or covering to insulate the lines, and was involved in attaching a copper wire to the energized high voltage lines above him. He was doing journeyman labor without adequate or proper supervision. While performing his work, Shaw came in contact with the high voltage line and was electrocuted. A journeyman worker on the pole next to Shaw was using an insulated bucket as a safety precaution. It was almost inevitable that Shaw, being permitted to work in violation of all statutory safety rules and common sense around energized high voltage lines, would be injured or electrocuted.

Public service utilities enjoy a unique and privileged status not enjoyed by any other business. They are companies which generate and distribute electricity for profit. They are given an exclusive franchise for an exclusive territory. They are guaranteed a profit; the rates are fixed at amounts which are just, fair, reasonable and sufficient. RCW 80.28.010. They are given state governmental power for the exercise of eminent domain. RCW 80.32.060. They are given the right to enter upon any land for the purpose

of locating and servicing such lines. RCW 80.32.070.

RCW 80.04.460 requires that a private service company shall give immediate notice to the commission of every accident resulting in death or injury occurring in the plant or system. RCW 80.28.130 provides that the commission may order repairs in order to promote the security or convenience of the public or employees.

RCW 80.04.440 provides:

> In case any public service company shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done . . . by any law of this state, . . . such public service company shall be liable to the persons . . . affected thereby for all loss, damage or injury caused thereby or resulting therefrom, . . .

RCW 80.04.300–.320 provide that a budget showing an amount of money which will be needed during the ensuing year for maintenance, operation and construction must be forwarded to the Utilities and Transportation Commission for its approval.

The whole scheme of regulating and controlling private utilities supports the conclusion that the utility has a nondelegable duty to see to the safety of persons employed on its premises, and that it cannot insulate itself from the negligence of an independent contractor.

The employer should be liable for the negligence of the independent contractor if, in the course of work, gravely injurious consequences might be expected to result from such negligence. There are inherently dangerous activities which require a whole set of precautions against the large number of hazards recognizable in advance as likely to occur. This nondelegable duty is dictated by a public policy designed to insure that the greatest precautions will be taken to avoid injury to an employee or other persons.

In order to safeguard against accidents, an owner who engages in such activities should have the duty to double-check safety requirements, whether upon the theory that

the statutes which control public service corporations imply that duty, or upon the theory of nondelegable duty as expressed in *Person v. Cauldwell–Wingate Co.,* 176 F.2d 237 (2d Cir. 1949), and in *Snyder v. Southern Cal. Edison Co.,* 44 Cal. 2d 793, 799–800, 285 P.2d 912 (1955), quoting from F. Harper, *Torts* § 292 (1933):

> [O]ne who employs an independent contractor is, as a general rule, not liable for the misconduct of the latter or of his servants while acting within the scope of the contract. . . .
>
> "[There are] certain exceptions and apparent exceptions which, with increasing tendency, seem likely to overshadow in importance and scope the rule itself. . . . A number of situations exist, however, which are actual cases of vicarious liability, that is, liability for the misconduct of the independent contractor and his servants although the contractee has himself been free from personal fault. A number of factors concur to constitute the grounds of policy for such allocation of risk from the immediate to the general entrepreneur. These considerations, in fact, constitute such a powerful argument for the liability of the employer of an independent contractor that it would seem highly desirable for the courts to adopt the rule of liability and confine nonliability to a few exceptional cases. This, the American courts, at least, have not yet done, but there is every reason to believe that sound social policy will induce the courts to make further inroads upon the rule of nonliability in this class of cases.

Addressing the concept of particularly dangerous or inherently dangerous nondelegable duty, W. Prosser, *Torts* § 70 (3d ed. 1964), at page 485 states:

> Obviously included within either concept are activities, such as the construction of reservoirs, . . . *high tension electric wires, . . .* which will be dangerous in spite of all reasonable care, . . .

(Italics mine. Footnotes omitted.)

I would hold that work on energized high tension voltage lines is so inherently dangerous that the owner has a nondelegable duty to assure the safety of employees, which renders him liable for the independent contractor's negligence.

I would reverse and remand for trial.

DOLLIVER, WILLIAMS, and DORE, JJ., concur with ROSEL-
LINI, J.

Reconsideration denied December 7, 1981.