[No. 19262-8-III. Division Three. August 21, 2001.]

JOSEPH HICKLE, ET AL., *Appellants*, v. WHITNEY FARMS, INC., ET AL., *Defendants*, SENECA FOODS CORPORATION, ET AL., *Respondents*.

*Rickey C. Kimbrough* and *Don S. Willner*, for appellants.

*Dennis Smith, David M. Jacobi, Sara E. Metteer,* and *Shilpa Bhatia* (of *Wilson, Smith, Cochran, Dickerson*), *Theodore L. Preg*, and *Jeffrey W. Daly*, for respondents.

SWEENEY, J. — An employer of an independent contractor generally is not liable for the acts of its contractor. There are, however, exceptions. One such exception imposes liability on an employer where the employer causes or knows of and sanctions the contractor's illegal conduct. *See Shaffer v. Acme Limestone Co.*, 206 W. Va. 333, 524 S.E.2d 688, 701 (1999). Another exception imposes liability on an employer where a statute or administrative regulation requires that the employer take precautions or implement specific safeguards for the safety of others. RESTATEMENT (SECOND) OF TORTS § 424 (1965).

Here, Seneca Foods Corporation and Milne Fruit Products, Inc., hired Whitney Farms, Inc., Philip and Arval Whitney, Philip Whitney, Jr., and his wife, and Whitney Brothers, Inc. (Whitney), who are farmers, to dispose of wastes from their factories. The wastes included fruit pomace and diatomaceous earth. Whitney did so illegally by dumping these wastes on its farm. The fruit pomace in combination with diatomaceous earth underwent a process of spontaneous combustion resulting in a burning covered pit. Phillip Hickle was seriously injured when he stepped onto the covered pit.

The question before us is whether Milne and Seneca are insulated from liability as a matter of law because they retained an independent contractor to dump their wastes. We conclude that they are not and that issues of material fact exist as to whether they knew that Whitney was illegally dumping their wastes and whether they knew or should have known of the potential hazard from spontaneous combustion if the wastes were improperly disposed of.

We therefore reverse the summary dismissal of the complaint of Joseph, Virginia and Phillip Hickle (Hickle) against these two defendants.

## FACTS

The trial court dismissed Hickle's claims against Seneca and Milne on summary judgment. Accordingly, we view the evidence in a light most favorable to the nonmoving party, Hickle. *See Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

### PARTIES

Whitney owns and operates a 136-acre farm in Benton County, Washington. Both Seneca and Milne operate industrial factories in Prosser, Benton County, Washington, that produce fruit juice. Phillip Hickle stepped onto a burning waste pit on Whitney's farm. Whitney had filled the pit with Seneca's and Milne's industrial wastes.

### DUMPING

A by-product of the production of fruit juice is fruit "pomace." This is fruit waste including stems, seeds, and other material. The fruit juice is also sometimes filtered through diatomaceous earth to filter out items smaller than the stems, seeds, and other waste by-products.

In about 1973, Seneca contracted with Whitney to dispose of fruit pomace and diatomaceous earth. Starting around 1989, Whitney also began hauling at least diatomaceous earth for Milne; this hauling continued until 1994. Milne denies that Whitney hauled anything other than diatomaceous earth for it. Seneca's contracts with Whitney required that Whitney comply with all applicable laws and regulations governing the hauling or disposal of the materials. The record is not clear whether Milne's contracts also required compliance.

Whitney's employees dumped this waste in a large pit on the Whitney farm. The pomace and diatomaceous earth were then covered with soil. The dump site was not licensed. And the dumping was, therefore, unlawful. *See* former RCW 70.95.030(18), (19) (1992); former RCW 70-.95.240 (1993); RCW 70.105.010(5); WAC 173-303-141(1)

(statutes and regulations governing disposal of wastes).[1]

Eventually, the waste pit caught fire as a result of spontaneous combustion. The fire in this dump site was not always apparent from ground level. The temperatures of the ash in this dump site exceeded 500 degrees Fahrenheit in places. The pit where these materials were dumped was not posted with any warning. Nor was there any other indication that it was a dump site.

NOTICE

As early as 1985, neighbors began to complain about the smoke, odor, and smoldering fire coming from this illegal waste dump. During the 1980s and early 1990s, various government agencies, including the Department of Ecology, the Benton-Franklin-Walla Walla Counties Air Pollution Control Authority, and the Benton-Franklin District Health Department, notified both Milne and Seneca that wastes leaving their plants were being illegally dumped by Whitney on its farm. Notices from one or more of these agencies also told Seneca and Milne that they were responsible for the proper disposal of the wastes.

INJURY

On October 24, 1996, Phillip Hickle was hunting on the Whitney property. He had hunted there before, as apparently others had. The property was not posted with "no trespassing" or "no hunting" signs. He walked over the covered, burning, underground pit and broke through. He was severely burned. The burns resulted in the loss of both of his legs below the knee and limited his use of one hand.

SUIT

Hickle sued Whitney, Seneca, and Milne. The court refused to dismiss Whitney following its motion for summary judgment. Whitney then settled with Hickle. Next, the court summarily dismissed Hickle's claims against Seneca and Milne. These claims were based on theories of strict liability, negligence, and violation of duties imposed

---

[1] The relevant portions of these laws and regulations are set out later in this opinion.

by the Solid Waste Management Act (chapter 70.95 RCW) and the Hazardous Waste Management Act (chapter 70.105 RCW).

## APPEAL

Hickle argues that both Seneca and Milne are liable under any of three legal theories: strict liability, negligence, and breach of nondelegable duties arising under the Solid Waste Management Act or the Hazardous Waste Management Act.

## STANDARD OF REVIEW

Appellate review of summary judgment dismissal is de novo. *E.g., Stuart v. Am. States Ins. Co.*, 134 Wn.2d 814, 818, 953 P.2d 462 (1998). This court must determine whether, after reviewing all relevant pleadings and affidavits in favor of the nonmoving party, any genuine issue of material fact exists that prevents the moving party from being entitled to judgment as a matter of law. *E.g., id.* (citing CR 56(c)).

## LIABILITY FOR ACTS OF AN INDEPENDENT CONTRACTOR

As a general rule, a principal is not liable for the torts of an independent contractor. But the general rule is subject to exceptions. *See Epperly v. City of Seattle*, 65 Wn.2d 777, 781, 399 P.2d 591 (1965). The employer of an independent contractor is not insulated from liability if the work is inherently dangerous; if the employer causes or knows of and sanctions illegal conduct; or if the employer owes a nondelegable duty of care to persons injured by the work of the independent contractor. *Epperly*, 65 Wn.2d at 781; *Shaffer*, 524 S.E.2d at 701; *cf. Tauscher v. Puget Sound Power & Light Co.*, 96 Wn.2d 274, 287, 635 P.2d 426 (1981). We discuss each exception in order.

INHERENTLY DANGEROUS ACTIVITY

██ Hickle first argues that the activities were inherently dangerous. Examples of activities traditionally considered to be inherently dangerous include the use of dynamite, gunpowder, firearms, or other flammable or explosive materials that fit our common understanding of the term. *Andrews v. Del Guzzi*, 56 Wn.2d 381, 392, 353 P.2d 422 (1960) (Ott, J., dissenting). They are inherently dangerous because they can never be made perfectly safe. Consequently, the law places the liability for any resulting harm on the one that chooses to perform such activities. RESTATEMENT (SECOND) OF TORTS §§ 519, 520 (1977).

Hickle relies on section 427 of the *Restatement (Second) of Torts* (1965), which would impose liability for "work involving a *special danger* to others which the employer [of an independent contractor] knows or has reason to know to be inherent in or normal to the work . . . ." (Emphasis added.)

The work done by Whitney here was not inherently dangerous as contemplated by section 427 of the *Restatement*. The substances it dumped are not toxic. The activity of hauling pomace or diatomaceous earth does not impose any immediate danger. And if properly disposed of, the waste materials pose no dangers to third parties. It was only the way in which Whitney disposed of these materials that ultimately created the hazard here. Section 427 of the *Restatement* does not then apply.

NEGLIGENCE

Hickle next argues that Seneca and Milne were liable because they knew of Whitney's illegal dumping and sanctioned it by continuing to employ Whitney to dispose of their industrial wastes.

In *Shaffer v. Acme Limestone Co.*, a quarry owner hired an independent contractor to haul stone. *Shaffer*, 524 S.E.2d 688. Employees of the quarry owner loaded the truck. Apparently they loaded one truck in excess of the legal limit. Because of the weight, the brakes failed. The truck was involved in an accident that injured the plaintiffs. The West Virginia Supreme Court reversed the trial

judge's summary dismissal of the plaintiffs' claims against the quarry owners, holding that:

> [T]he independent contractor defense is unavailable to a party employing an independent contractor when the party (1) causes unlawful conduct or activity by the independent contractor, or (2) *knows of and sanctions the illegal conduct* or activity by the independent contractor . . . .

*Shaffer*, 524 S.E.2d at 701 (emphasis added).

■ Here, there is an issue of fact as to whether Seneca and Milne knew that Whitney was dumping their industrial wastes illegally. Hickle presented evidence that Seneca and Milne had been advised by various public health and environmental agencies that their wastes were not being dumped in a licensed landfill. These government agencies also told both Seneca and Milne that the wastes remained their responsibility until they were properly disposed of. And, the evidence relied upon by Hickle in opposing summary judgment created an issue as to whether Seneca and Milne knew or should have known of the potential hazards that would follow the improper disposal of these wastes. Hickle presented evidence of complaints by neighbors of smoke coming from the Whitney disposal site. Their experts, James McKenna and Dr. William Stewart, also testified that the characteristics of fruit pomace and diatomaceous earth include spontaneous combustion.

In sum, then, the evidence, looked at in a light most favorable to Hickle, would support the following:

1. Milne and Seneca hired a local farmer to dispose of large scale industrial wastes, specifically fruit pomace and diatomaceous earth.

2. Both Milne and Seneca knew, because they had been advised by a number of governmental agencies, that the wastes were being disposed of illegally.

3. Both Milne and Seneca knew or could easily have discovered that these wastes, if improperly disposed of, had the potential to become dangerous.

We conclude that if these facts are proved at trial, neither Milne nor Seneca is entitled to the insulation normally afforded to a principal of an independent contractor when injury results to a third party. Issues of fact remain as to each of these elements. The superior court should not then have dismissed Hickle's negligence claim.

NONDELEGABLE DUTIES IMPOSED BY STATUTES

Section 424 of the *Restatement* imposes liability upon employers of independent contractors, as follows:

> One who by statute or administrative regulation is under a duty to provide specified safeguards or precautions *for the safety of others* is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

(Emphasis added.) *See also Tauscher*, 96 Wn.2d at 287 (dicta).[2]

*Solid Waste Management Act*

██ Seneca and Milne do not dispute that fruit pomace and diatomaceous earth are industrial solid wastes by definition under the Solid Waste Management Act (chapter 70.95 RCW). Nor do they dispute that it is unlawful to dispose of solid waste except in a solid waste disposal site for which there is a valid permit. *See* former RCW 70-.95.030(19) (1992); former RCW 70.95.240 (1993). But they dispute that this Act imposes a nondelegable duty on the generators of the waste to protect persons like Phillip Hickle from the type of harm he suffered.

"Whether the defendant is a governmental entity *or a private person*, to be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general." *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988) (emphasis added). The stated purpose of the

---

[2] *Tauscher* concerned an action for negligence brought by an employee of an independent contractor against an owner. The cited rule applies to "others," i.e., persons not in the employ of the independent contractor.

Solid Waste Management Act is to "prevent land, air, and water pollution." RCW 70.95.020. The duty imposed by the statutory scheme is to the public, not individuals. We therefore conclude that Seneca's and Milne's statutory duties under chapter 70.95 RCW do not impose a duty of care to specific persons. And, unlike the Hazardous Waste Management Act discussed below, the Solid Waste Management Act creates no private cause of action. *See Cazzanigi v. Gen. Elec. Credit Corp.*, 132 Wn.2d 433, 449-50, 938 P.2d 819 (1997).

*Hazardous Waste Management Act*

The Hazardous Waste Management Act (chapter 70.105 RCW) specifically provides a private cause of action for damages: "[a] person injured as a result of a violation of this chapter or the rules adopted thereunder *may bring an action* in superior court for the recovery of the damages."[3] RCW 70.105.097 (emphasis added).

■■ The question then is whether Phillip Hickle was "injured as a result of violation [of the Act]." We believe that at a minimum the question raises an issue of fact.

The Act defines "dangerous wastes" as

any discarded . . . substances . . . which are disposed of in such quantity or concentration as to pose a substantial present or *potential hazard* to human health . . . because such wastes or constituents or combinations of such wastes:

. . . .

(b) Are corrosive, explosive, flammable, or may generate pressure through decomposition or other means.

RCW 70.105.010(5) (emphasis added).

"A person may offer a designated dangerous waste only to a . . . facility which is operating . . . [u]nder a permit issued pursuant to the requirements of this chapter[.]" WAC 173-303-141(1).

Seneca and Milne argue that fruit pomace and dia-

---

[3] The only Washington case that cites the statute is Division Three of the Court of Appeals' *DeYoung v. Cenex Ltd.*, 100 Wn. App. 885, 1 P.3d 587 (2000). That case did not involve an independent contractor situation such as at issue here.

tomaceous earth are not "designated dangerous wastes." What qualifies a waste as a "designated" dangerous waste? As commonly used, the word "designate" suggests that some form of official action is necessary. But, when read in the context of the regulatory scheme contained in chapter 173-303 WAC, it is clear that "designate" is a term of art and has a broader meaning. "Designated dangerous wastes" include not only wastes listed by name in the regulations, but other wastes that exhibit dangerous waste characteristics as described in WAC 173-303-090.

The pertinent regulations are as follows: WAC 173-303-040 defines "dangerous wastes" as "those solid wastes designated in WAC 173-303-070 through 173-303-100 as dangerous." The process for designating wastes is set out in WAC 173-303-070. The process applies "to any person who generates a solid waste . . . that is not exempted or excluded by this chapter or by the department." WAC 173--303-070(1)(b). Specifically:

(a) To determine whether or not a solid waste is designated as a dangerous waste a person must:

(i) First, determine if the waste is a listed discarded chemical product, WAC 173-303-081;

(ii) Second, determine if the waste is a listed dangerous waste source, WAC 173-303-082;

(iii) Third, if the waste is not listed in WAC 173-303-081 or 173-303-082, or for the purposes of compliance with the federal land disposal restrictions as adopted by reference in WAC 173-303-140, determine if *the waste exhibits any dangerous waste characteristics*, WAC 173-303-090[.]

WAC 173-303-070(3) (emphasis added).

"Ignitability" is a dangerous waste characteristic. WAC 173-303-090(5). "A solid waste exhibits the characteristic of ignitability if a representative sample of the waste has any of the following properties: . . . (ii) It is not a liquid and is capable, under standard temperature and pressure, of causing fire through . . . spontaneous chemical changes and, when ignited, burns so vigorously and persistently

that it creates a hazard[.]" WAC 173-303-090(5)(a).

Seneca and Milne point out that the Health District's notes and letters to Seneca and Milne complaining about Whitney's disposal of their wastes refer only to regulations promulgated under the Solid Waste Management Act, chapter 70.95 RCW. They do not reference the Hazardous Waste Management Act, chapter 70.105 RCW. Moreover, they continue, Hickle's experts opined that the fruit pomace and diatomaceous earth constitute industrial solid wastes, *but not that they are "dangerous wastes,"* as that term is used in RCW 70.105.010(5).

But expert James McKenna expressed the opinion that "[w]hen placed in storage piles to decompose over substantial periods of time, [fruit pomace] is capable of spontaneous combustion." Clerk's Papers (CP) at 50. That opinion alone supports the inference that fruit pomace is a "dangerous waste" under the Hazardous Waste Management Act. RCW 70.105.010(5).

The affidavit of Dr. William Stewart also supports an inference that diatomaceous earth is a dangerous waste. He states that diatomaceous earth filtration materials contain biologically active material. These materials can spontaneously combust after they are used to filter fruit juice. CP at 146.

█ Here, the trial court apparently believed that the wastes had to be dangerous when Seneca and Milne delivered them to Whitney. The language of the Act does not so limit its application. The statute uses the term "present *or potential* hazard" in defining "dangerous wastes." RCW 70.105.010(5) (emphasis added).

The opinions of these experts then create an issue of fact as to whether the wastes were "dangerous wastes" under the Act and therefore improperly disposed of by Whitney. If they were, then the fact that Whitney was an independent contractor does not insulate Seneca and Milne from liability for Whitney's wrongful conduct. Restatement (Second) of Torts § 424 (1965).

## CONCLUSION

The superior court erred when it summarily dismissed Hickle's actions against Seneca and Milne. Issues of fact remain on the question of whether Seneca and Milne knew of and sanctioned Whitney's illegal dumping. *See Shaffer,* 524 S.E.2d 688. And the experts' descriptions of the combustive properties of fruit pomace and spent diatomaceous earth present a factual question as to whether they fall within the definition of "dangerous wastes." RCW 70.105.010(5). If they do, then Seneca and Milne had a nondelegable duty to dispose of their wastes properly. *See* RESTATEMENT (SECOND) OF TORTS § 424 (1965); *Tauscher,* 96 Wn.2d at 287 (dicta).

Reversed.

BROWN, A.C.J., and KATO, J., concur.

Reconsideration denied September 26, 2001.

Review granted at 146 Wn.2d 1001 (2002).