[No. 38744-1-II.   Division Two.   January 11, 2011.]

LARRY STOUT, *Appellant*, v. CLARENCE JOHNSON, JR., ET AL., *Respondents*.

*Robert Helland* and *Barbara H. McInvaille*, for appellant.
*Wayne C. Fricke*, for respondents.

¶1 HUNT, J. — Larry Stout appeals the trial court's grant of summary judgment dismissal of Clarence and Sally Doe Johnson, doing business as "CJ" Johnson Bail Bonds (Johnson), from Stout's lawsuit against them. Stout had sued Johnson for damages based on injuries he suffered when Johnson's independent contractor's subcontractor apprehended Stout after Stout failed to appear in court on a criminal case for which Johnson had posted Stout's bail. Stout argues that summary judgment was inappropriate because bail bond recovery is an "inherently dangerous occupation" and, therefore, Johnson should be liable for the actions of its independent contractors. Br. of Appellant at 10. We hold that Stout is not entitled to bring an action for

damages under the "inherently dangerous activity" exception to the general rule absolving principals from liability for their independent contractors' actions because this exception is intended to protect innocent third parties and not Stout, who triggered and knowingly participated in the bail bond recovery, with awareness of at least some associated risk. We affirm.

## FACTS

### I. BACKGROUND

¶2 The basic facts are not in dispute. On or about May 1, 2002, Johnson, doing business as "CJ" Johnson Bail Bonds, contracted with Larry Stout to post a $50,000 bail bond for Stout in a Pierce County felony drug charge case. On May 23, the State notified Johnson that Stout had missed a court appearance and, consequently, Johnson would forfeit the entire $50,000 bond unless Stout appeared.

¶3 Johnson retained independent contractor James Michael Golden, doing business as CCSR Fugitive Recovery, to apprehend Stout. Golden subcontracted with Carl Warren to retrieve Stout. On July 16, Warren learned that Stout would be in a certain Tacoma area within the next 30 minutes, drove with his partner Jason Ferrell to that location, positioned himself in a driveway, positioned Ferrell "in the trees" across from him, and waited with Ferrell for Stout to drive by on a private gravel roadway. Clerk's Papers (CP) at 46.

¶4 There are two different accounts about what occurred next. On summary judgment, however, we take the facts in the light most favorable to the nonmoving party,[1] here, Stout: As Stout travelled down the private gravel roadway, Golden pulled his vehicle out and hit Stout's vehicle from

---

[1] *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860-61, 93 P.3d 108 (2004) (citing *City of Lakewood v. Pierce County*, 144 Wn.2d 118, 125, 30 P.3d 446 (2001)).

behind. Stout collided with a nearby tree and sustained severe injuries, resulting in amputation of his leg.[2]

## II. PROCEDURE

¶5 In 2004, Stout sued Johnson, et al., claiming that Johnson was liable for Warren's allegedly tortious actions, which had caused his (Stout's) injuries.[3] Johnson moved for partial summary judgment on the issue of "agencies, . . . liability for intentional acts and joint and several liability." CP at 118. Johnson argued that the trial court should dismiss it (Johnson) from Stout's lawsuit because "[n]o evidence [shows] that [Warren] was an employee or agent of [Johnson] at the time of the collision"; instead, Warren was an independent contractor, for whose actions Johnson was not liable. CP at 120. The trial court initially denied Johnson's motion for summary judgment.

¶6 Stout filed a cross motion for partial summary judgment, arguing that "[b]ounty hunting[4] is inherently dangerous and [Johnson is] therefore vicariously liable under the doctrine of respondeat superior for the tortious acts of the bounty hunters they retain, despite the fact they call them

---

[2] According to Warren, as Stout passed by in his car, Ferrell identified himself and stepped into the road, at which point Stout

swerved to hit [Ferrell]. [Stout] had approximately 100 [feet] to stop, but accelerated toward [Ferrell] forcing [Ferrell] to jump into the woods to keep from being hit. I [Warren] immediately pulled out and attempted to stop [Stout]. He accelerated to approx[imately] 55 [miles per hour] on the dirt road. [Stout] was reaching for something which I [Warren] assumed to be a gun. I hit [Stout's] vehicle from behind[,] [Stout] lost control and hit a cottonwood tree.

CP at 46.

[3] Stout alleged that (1) Warren "was either acting as an independent contractor or was acting as an employee or agent of [Johnson] or [Golden]," CP at 3; and (2) Johnson was, therefore, liable for Warren's negligence, assault and battery, and intentional infliction of emotional distress. Stout's amended complaint also included Golden and Warren as defendants but Stout ultimately dismissed Golden from the lawsuit. This appeal, however, concerns only defendant Johnson.

[4] For purposes of this opinion, we use the statutory term "bail bond recovery." *See, e.g.,* RCW 18.185.010(10).

'independent contractors.'" CP at 208.[5] But Stout failed to identify any Washington case law holding that bail bond recovery is an "inherently dangerous" activity. CP at 209. And the superior court denied Stout's motion for summary judgment, noting, "[Stout's] showing of facts is insufficient to grant summary judgment on [the] issue of inherent[ ] dangerousness of bail bond recovery agents." CP at 234.

¶7 The trial court granted Johnson's renewed motion for summary judgment, thereby dismissing Johnson from the lawsuit. In so doing, the trial court noted:

> The [Superior] Court finds that . . . Fugitive Recovery is not an "inherently dangerous" occupation, and, as such, [Johnson is] not responsible for the actions of independent contractors [Warren] and [Golden]. [T]he case against [Johnson] is hearby dismissed.

CP at 240.

¶8 Stout appeals the superior court's grant of Johnson's motion for summary judgment.

## ANALYSIS

¶9 Stout challenges the superior court's granting Johnson's summary judgment motion and its legal determination that bail bond recovery is not an "inherently dangerous activity." Br. of Appellant at 16. In response, Johnson argues that not only was the superior court's legal conclusion correct but also Stout "should not be able to even claim this exception" because he participated in the activity. Br. of Resp'ts at 19. Stout did not address this argument in his reply brief.

¶10 Stout argues that bail bond recovery is an "inherently dangerous" activity for purposes of imposing liability on Johnson for his independent contractor's actions. Br. of

---

[5] *See, e.g., Tauscher v. Puget Sound Power & Light Co.*, 96 Wn.2d 274, 287, 635 P.2d 426 (1981) ("[I]n inherently dangerous situations, an owner cannot delegate his or her duty of care toward 'others' to an independent contractor and escape liability.").

Appellant at 10. Disagreeing, we hold that even assuming without deciding that bail bond recovery is an "inherently dangerous activity," Stout triggered, knowingly participated in, and was aware of at least some risk associated with the allegedly "inherently dangerous activity." Thus, Stout was not entitled to damages from Johnson under this exception to the general rule absolving owners of liability for the actions of their independent contractors. Accordingly, we affirm the trial court's grant of summary judgment to Johnson.

## I. STANDARD OF REVIEW

¶11 A trial court will grant a motion for summary judgment if the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c). We review the superior court's legal decision de novo, taking the facts in the light most favorable to Stout, the nonmoving party on summary judgment below. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004) (citing *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993)).

## II. PARTICIPANT CANNOT INVOKE "INHERENTLY DANGEROUS ACTIVITY" EXCEPTION

### A. "Inherently Dangerous Activity" Exception

¶12 "Vicarious liability, otherwise known as the doctrine of respondeat superior, imposes liability on an employer for the torts of an employee who is acting on the employer's behalf." *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997). But in general, an employer who hires an independent contractor is not vicariously liable for the actions of its independent contractor. *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 330, 582 P.2d 500 (1978) (citing *Fenimore v. Donald M. Drake Constr. Co.*, 87 Wn.2d 85, 549 P.2d 483 (1976)); *see also* RESTATEMENT (SEC-

OND) OF TORTS § 409 (1965) ("[T]he employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.").

¶13 There is, however, an exception to this general principle: "[I]n inherently dangerous situations, an owner [i.e., employer of an independent contractor] cannot delegate his or her duty of care toward 'others' to an independent contractor and escape liability." *Tauscher v. Puget Sound Power & Light Co.*, 96 Wn.2d 274, 287, 635 P.2d 426 (1981).[6] For purposes of this opinion, we assume, without addressing or deciding, that bail bond recovery is an inherently dangerous activity for purposes of the exception to the general rule that the employer of an independent contractor may not be held liable for its independent contractor's actions, including the actions of the independent contractor's employees.

## B. Employees of Independent Contractors and Innocent Third Parties

¶14 Although Stout is not an employee of Johnson (the independent contractor here), the different applications of the "inherently dangerous activity" exception to independent contractors' employees and innocent third parties illustrate why Stout has no cause of action under this exception. Our Supreme Court has circumscribed "the class of persons" entitled to the "inherently dangerous activity" exception to pursue a tort claim against the employer that hires an independent contractor who engages in such activities. *Epperly v. City of Seattle*, 65 Wn.2d

---

[6] We note that *Tauscher* provides an additional rationale for denying independent contractor's employees recovery from the one who hired the independent contractor: Usually such employees can obtain worker's compensation for work-related injuries. *See Tauscher*, 96 Wn.2d at 282. This secondary *Tauscher* rationale does not apply to Stout (Stout was not an employee of Johnson); and it does not alter our holding here, which finds support in the assumption of risk rationale of *Epperly v. City of Seattle*, 65 Wn.2d 777, 784, 399 P.2d 591 (1965). *Epperly* denied imposition of liability on the independent contractor even though the court made no mention of the availability of workers' compensation.

777, 784, 399 P.2d 591 (1965). *Epperly*, an employee of an independent contractor hired by the City of Seattle, died while working on a river dam. *Epperly*, 65 Wn.2d at 778. Epperly's widow sued Seattle based on negligence, arguing that Seattle was liable under the "inherently dangerous activity" exception. Rejecting the widow's argument, the court concluded that " 'the [inherently dangerous activity] rule is designed to protect third persons,' " *Epperly*, 65 Wn.2d at 781 (emphasis omitted) (quoting *Corban v. Skelly Oil Co.*, 256 F.2d 775, 780 (5th Cir. 1958)), not those who have "reason to know that there is an unavoidable risk to which those taking part in the activity or coming within its reach will subject themselves." *Epperly*, 65 Wn.2d at 782-83.

¶15 As an employee of the independent contractor, Epperly was "engaged upon the project out of which the hazard arose" and, therefore, "was not within the class of persons protected"; consequently, he had no "right to recovery" under the "ultrahazardous activity"[7] exception to the rule barring recovery from the entity that hired the independent contractor, namely Seattle. *Epperly*, 65 Wn.2d at 784, 782-83. Since *Epperly*, Washington courts have continued to limit the class of persons having a right of recovery under the "inherently dangerous activity" exception; these cases, however, have focused primarily on employees of independent contractors, like Epperly. *See, e.g., Tauscher*, 96 Wn.2d at 279; *Rogers v. Irving*, 85 Wn. App. 455, 465, 933 P.2d 1060 (1997) ("Special rules pertaining to inherently dangerous activities are designed to protect third persons who might be harmed by such activities, not those who knowingly take part in them.").

¶16 Our Supreme Court based its *Epperly* holding on an assumption-of-risk rationale, which it used to distinguish between two classes of persons to whom the party hiring the independent contractor owed different duties of care

---

[7] The *Epperly* court uses the phrases "ultrahazardous activity" and "inherently dangerous activity" interchangeably. Similarly, for purposes of this opinion, we use these phrases interchangeably, depending on the language used in the source that we are citing.

when undertaking highly dangerous activities—innocent third parties and the independent contractor's employees. With respect to an independent contractor's employees, the court cited *Restatement of Torts* § 523 (1938), which stated that a person who carries on an "ultrahazardous activity" is not strictly liable for harms suffered by another person who (1) " 'has reason to know of the risk which makes the activity ultrahazardous' " and (2) " 'takes part in' " the activity or brings himself into the area of danger. *Epperly*, 65 Wn.2d at 782 (quoting RESTATEMENT OF TORTS § 523 (1938)[8]). Independent contractors and their employees, such as Epperly, "know that there is an unavoidable risk to which those taking part in the activity or coming within its reach will subject themselves." *Epperly*, 65 Wn.2d at 782-83. For these reasons, the Supreme Court rejected Epperly's argument that employees of independent contractors could recover against an "owner," such as Seattle, under the "inherently dangerous activity" exception. *See Epperly*, 65 Wn.2d at 783.

¶17  Consistent with its assumption-of-risk rationale, the *Epperly* court distinguished the other class of persons exposed to inherently dangerous activities—innocent third parties. The court explained that, unlike independent contractor employees, innocent bystanders do not undertake the risks that accompany inherently dangerous activities; and, therefore, an employer of an independent contractor hired to undertake ultrahazardous activities is strictly liable for innocent third parties' injuries caused by the independent contractor or its employees. *See Epperly*, 65 Wn.2d at 783-84; *see also Rogers*, 85 Wn. App. at 465 ("Special rules pertaining to inherently dangerous activities are designed to protect third persons who might be harmed by such activities, not those who knowingly take part in them.").

---

[8] *Restatement (Second) of Torts* § 523 (1977) subsumes the assumption of risk concept contained in *Restatement of Torts* § 523 (1938).

## C. Other Participants in "Inherently Dangerous Activity"

¶18 Until now, Washington courts have not addressed whether classes of persons other than employees of independent contractors similarly are entitled to use the "inherently dangerous activity" exception to seek recovery from the party hiring the independent contractor. Addressing this issue of first impression, we agree with Johnson[9] and hold that as a person who triggered and knowingly participated in the bail bond recovery while aware of some attendant risk, Stout does not have a cause of action against Johnson under this exception.

¶19 Bail bond recovery is an activity that involves two participants: the fugitive and the bail bond recovery agent. But for the fugitive, there would be no bail bond recovery. *See* RCW 18.185.010(10) (defining "bail bond recovery agent" as "a person who is under contract with a bail bond agent to receive compensation, reward, or any other form of lawful consideration for locating, apprehending, and surrendering a *fugitive* criminal defendant for whom a bail bond has been posted" (emphasis added)). Like the employees of the independent contractors in *Epperly* and *Tauscher*, Stout not only knowingly participated in this bail bond recovery activity, which resulted in his injuries, but also precipitated this activity by his own actions and failures to act. And even after triggering the bail bond recovery activity, Stout continued to participate, even though he could have stopped it simply by turning himself in, as he had originally promised when Johnson posted his bond.

¶20 For example, Stout acknowledged that (1) he "had multiple telephone messages from [Warren] indicating that [Warren] was trying to pick [him] up for a failure to appear through C.J. Johnson's bail bond company"; (2) he (Stout) "had been in seven different houses trying to avoid apprehension," all of which Warren "was able to find"; and (3) he

---

[9] Br. of Resp'ts at 19 (citing *Rogers*, 85 Wn. App. at 465).

(Stout) eventually "grew tired of running" and "was tired of Carl Warren chasing [him]," so he (Stout) advised Johnson that he was willing to turn himself in. CP at 31. But when Johnson took steps to facilitate Stout's appearance in court, Stout reneged on his promise and he failed to appear. About a month later, Warren tracked down, pursued, and caught Stout, during which apprehension Stout suffered injuries. Thus, the record shows that Stout was a participant in, even a precipitator of, the bail bond recovery activity during which he was injured.

¶21 Furthermore, we cannot say that Stout was unaware that his flight from Warren would create the possibility of harm to himself. Based on previous experience, for example, Stout was familiar with independent-contractor, bail-bond-recovery employee Warren and his bail bond recovery activity: Warren had previously apprehended Stout on a different bail bond recovery mission three months before the July 2002 incident at issue here. And the record includes evidence that a repeat fugitive like Stout would know that a bail bond recovery agent, like Warren, might use a vehicle for recovery purposes. For example, Stout's submission of a national bail bond agency manager's declaration states:

> [W]ith the "independent contractor" recovery agents it is common knowledge that they will be involved in vehicle pursuits in order to obtain the fugitive. . . . It is not uncommon for "independent contractor" bail recovery agents to chase a defendant by automobile and to attempt to do whatever it takes to get the defendant to stop.

CP at 25-26.

¶22 Stout's protracted flight from Golden and Johnson, Stout's experience with prior bail bond recovery efforts to apprehend him, and the general custom of bail bond activity all give rise to a reasonable inference that Stout had general knowledge of the risk accompanying bail bond recovery. Moreover, our holding is not foreclosed even if Stout may not have anticipated that Warren would ram his

(Stout's) car off the road on July 16. As the *Epperly* court explained:

> [I]t is not necessary that the person who knows of the activity and its risks should know *all of the causes* of the risks inseparable from the activity. It is enough that he has reason to know that there is an unavoidable risk to which those taking part in the activity or coming within its reach will subject themselves.

*Epperly*, 65 Wn.2d at 782-83 (emphasis added). Thus, Stout need not have been prescient to fall outside the "inherently dangerous activity" exception; it is sufficient that he knew that there was a risk of at least some peril when he absconded.

¶23 In contrast, Stout had to have known that there would have been little or no risk of peril in turning himself in to Johnson, as Stout originally promised, or in cooperating later by peacefully surrendering to Warren. But Stout chose the risk of peril over safety. Accordingly, under *Epperly*'s "assumption of risk" rationale, Stout does not fall within the class of innocent, nonparticipant bystanders whom the "inherently dangerous activity" exception was designed to protect.

¶24 Even viewing the facts in the light most favorable to Stout, Stout triggered and participated in the bail bond recovery, with some awareness of the attendant risks. Accordingly, as a matter of law, we hold that he cannot recover damages from Johnson under the "inherently dangerous activity" exception to the general rule precluding owner liability for the actions of its independent contractors.[10]

¶25 Accordingly, we affirm the superior court's grant of summary judgment dismissing Johnson from Stout's lawsuit for damages.

QUINN-BRINTNALL and VAN DEREN, JJ., concur.

Review granted at 171 Wn.2d 1035 (2011).

---

[10] This appeal does not present nor do we address (1) whether Warren acted reasonably and whether Stout could pursue a negligence claim against Warren or Golden; or (2) whether Johnson could be liable to an innocent third party under the "inherently dangerous activity" exception if, for example, Warren's chase had caused Stout's car to injure an innocent bystander.