[No. 85699-1.   En Banc.]
Argued January 17, 2012.     Decided December 20, 2012.

BARBARA STOUT, *as Personal Representative, Petitioner,*
v. CARL J. WARREN ET AL., *Defendants,*
CLARENCE JOHNSON, JR.,
ET AL., *Respondents.*

*Andrew K. Helland* (of *Law Office of Robert Helland*), for petitioner.

*Wayne C. Fricke* (of *Hester Law Group*), for respondents.

¶1 STEPHENS, J. — Larry Stout was severely injured during his apprehension by a subcontractor of CJ Johnson Bail

Bonds (CJ Johnson) and sued the subcontractor, the contractor, and the owners of CJ Johnson. Stout asserts two theories of vicarious liability: (1) the activity is an "abnormally dangerous" one, *Restatement (Second) of Torts* § 427A (1965), and (2) the activity (a) involves a "special danger" that is "inherent in or normal to the work," *id.* § 427, or (b) poses a "peculiar risk of physical harm," *id.* § 416. The trial court granted summary judgment to the owners of CJ Johnson, determining that vicarious liability does not apply. The Court of Appeals affirmed on different grounds, assuming arguendo that vicarious liability applies to the activity but holding that such liability is available only to "innocent[ ] nonparticipant[s]," not those voluntarily engaging in the dangerous activity with knowledge of the danger. *Stout v. Johnson*, 159 Wn. App. 344, 356, 244 P.3d 1039 (2011). We reverse the Court of Appeals.

## FACTS

¶2 In 2002, Stout was charged with multiple felonies related to the manufacture of methamphetamine. Bail was set at $50,000, and Stout entered into an agreement with CJ Johnson, a sole proprietorship, which posted the bail bond. Stout failed to appear at two hearings, so on May 23, 2002, a bench warrant was issued for his arrest and the Pierce County prosecuting attorney's office notified CJ Johnson that it would forfeit its bond. On July 1, 2002, CJ Johnson entered into a contract with CCSR, a business solely consisting of Michael Golden, to "secur[e] the physical custody of [Stout] and surrender[ ] him . . . to" the Pierce County jail. Clerk's Papers (CP) at 253-55. At some point after CCSR obtained the contract, Carl Warren contacted Golden, stating that he could apprehend Stout. Golden faxed Warren the necessary paperwork.

¶3 On July 16, 2002, Stout left a residence in Pierce County and was traveling down a gravel roadway. As he did so, a 1977 Chevy 4x4 pickup truck driven by Warren pulled

out and accelerated rapidly toward him. Stout also accelerated to avoid a collision, but Warren rammed the rear end of Stout's 1997 Toyota Corolla, causing it to collide with a tree. Stout was traveling at least 55 miles per hour, and Warren was traveling at up to 70 miles per hour. After hitting the tree, Stout was pinned in the vehicle and eventually had to have one leg amputated.

¶4 Stout filed an amended complaint for damages on August 12, 2004, naming Warren, Golden, and Johnson, along with each of their spouses, as defendants. The trial court granted the Johnsons' motion for summary judgment, finding that "Fugitive Recovery is not an 'inherently dangerous' occupation" rendering Johnson vicariously liable for Warren's action. *Id.* at 240. The order dismissed Stout's case against Johnson.[1] Stout appealed the order dismissing Johnson. The Court of Appeals assumed, arguendo, that fugitive defendant apprehension is an inherently dangerous activity. *Stout*, 159 Wn. App. at 351. The Court of Appeals then determined, as a matter of first impression, that "a person who triggered and knowingly participated" in the inherently dangerous activity, "while aware of some attendant risk," may not take advantage of this theory of vicarious liability. *Id.* at 354. We granted Stout's petition for discretionary review. *Stout v. Warren*, 171 Wn.2d 1035, 257 P.3d 665 (2011).

## ANALYSIS

¶5 When reviewing an order granting summary judgment, "an appellate court engages in the same inquiry as the trial court." *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 197, 943 P.2d 286 (1997). All facts and reasonable inferences are considered in the light most favorable to the nonmoving party. *Kelley v. Centennial Contractors Enters., Inc.*, 169 Wn.2d 381, 386, 236 P.3d 197 (2010).

---

[1] In April 2009, the court also dismissed Golden as a defendant.

## A. *Vicarious Liability Based on Dangerous Activities*

■ ¶6 The general rule in Washington is that a principal is not liable for injuries caused by an independent contractor whose services are engaged by the principal. *Hickle v. Whitney Farms, Inc.*, 107 Wn. App. 934, 937, 29 P.3d 50 (2001), *aff'd*, 148 Wn.2d 911, 64 P.3d 1244 (2003); *see also* RESTATEMENT (SECOND) OF TORTS § 409 (1965). Two exceptions to this general rule are at issue in the present case: (1) carrying on "an abnormally dangerous activity," RESTATEMENT (SECOND) OF TORTS § 427A, and (2) engaging in an activity that is inherently dangerous or poses a "peculiar risk of physical harm," *id.* §§ 416, 427. The exceptions for activities that pose a peculiar risk or are inherently dangerous are functionally identical. *See id.* §§ 416 cmt. a, 427 cmt. a; *see also Sea Farms, Inc. v. Foster & Marshall Realty, Inc.*, 42 Wn. App. 308, 314, 711 P.2d 1049 (1985). For clarity, we refer to the principle of liability set forth in section 427A of the *Restatement (Second) of Torts* as "abnormally dangerous activity vicarious liability" and the principle espoused in sections 416 and 427 of the *Restatement (Second) of Torts* as "peculiar risk vicarious liability."

■ ¶7 Abnormally dangerous activity vicarious liability and peculiar risk vicarious liability are two distinct theories, s*ee* RESTATEMENT (SECOND) OF TORTS § 416 cmt. d, though our case law has not rigorously distinguished between them, *see, e.g., Epperly v. City of Seattle*, 65 Wn.2d 777, 781-83, 399 P.2d 591 (1965); *Hickle*, 107 Wn. App. at 941. We take this opportunity to reiterate the distinction.

¶8 Whether an activity is abnormally dangerous is determined through consideration of six factors. RESTATEMENT (SECOND) OF TORTS § 520 (1977).[2] The factors consider whether the "dangers and inappropriateness for the local-

---

[2] The parties did not brief or argue the applicability of the third restatement's reformulation of the "abnormally dangerous activity" definition. *See* RESTATEMENT (THIRD) OF TORTS: LIAB. FOR PHYSICAL & EMOTIONAL HARM § 20(b) (2010). Accordingly, we do not address it. *See* RAP 13.7(b).

ity" of the activity are "so great that, despite any usefulness it may have for the community, [the principal] should be required as a matter of law to pay for any harm it causes, without the need of a finding of negligence." *Id.* § 520 cmt. f. By contrast, a "peculiar risk of physical harm to others" is one that arises out "of the same character" of "the work to be done" and that "is not a normal, routine matter of customary human activity." *Id.* § 416 & cmt. b, § 413 cmt. b. In particular, a significant distinction between the two theories of vicarious liability is that if the activity is likely to result in harm despite all reasonable care, it is apt to be an abnormally dangerous activity. *See Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 939 (7th Cir. 1986). An abnormally dangerous activity also creates strict liability, RESTATEMENT (SECOND) OF TORTS § 519(1), while an activity posing a peculiar risk does not.

## B. Fugitive Defendant Apprehension

¶9 At the outset, we must determine whether either the abnormally dangerous activity or the peculiar risk theory of vicarious liability applies in this case. We conclude that fugitive defendant apprehension is not an abnormally dangerous activity but that it *is* an activity that poses a peculiar risk of harm and therefore results in a principal's vicarious liability for the negligence of an independent contractor.

### 1. Fugitive Defendant Apprehension Is Not an Abnormally Dangerous Activity

¶10 Fugitive defendant apprehension is not an abnormally dangerous activity. In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

*Id*. § 520. Though no single factor is either necessary or sufficient, *id*. § 520 cmt. f, at least one factor among (a), (b), and (c)—the factors addressing whether the activity is " 'ultrahazardous' "—must generally be present. *Id*. § 520 cmt. h. And, at least one factor among (d), (e), and (f) must also be present. *Klein v. Pyrodyne Corp*., 117 Wn.2d 1, 8-9, 810 P.2d 917, 817 P.2d 1359 (1991) (quoting *New Meadows Holding Co. v. Wash. Water Power Co*., 102 Wn.2d 495, 504, 687 P.2d 212 (1984) (Pearson, J., concurring) ("strict liability . . . may not be imposed absent the presence of at least one of the factors stated in clauses (d), (e) and (f)")). In addition, consideration of the likelihood of harm and its magnitude "must be further evaluated in light of factor (c), which speaks of the 'inability to eliminate the risk by the exercise of reasonable care'." *Crosby v. Cox Aircraft Co. of Wash*., 109 Wn.2d 581, 587, 746 P.2d 1198 (1987) (quoting RESTATEMENT (SECOND) OF TORTS § 520(c)). The relevant "risk" under subsection (c) is the " 'high degree of risk' " mentioned in subsection (a); thus, the mere existence of "[s]ome degree of risk" after exercising reasonable care is not sufficient to make subsection (c) weigh in favor of the activity being characterized as abnormally dangerous. *New Meadows Holding Co*., 102 Wn.2d at 501-02.

■ ■ ¶11 Applying the section 520 factors to fugitive defendant apprehension, it becomes apparent that the activity is not abnormally dangerous. The burden is on the party asserting that an activity is abnormally dangerous to establish a factual basis for that conclusion. *See Anderson*, 801 F.2d at 939-40. Subsection (a) is concerned with the

likelihood of harm while subsection (b) concerns the likelihood that the harm will be of great magnitude. While the record indicates that there is always a risk of *some* harm, it does not demonstrate the requisite "high degree of risk" when reasonable care is exercised—to the contrary, the record suggests that harm infrequently results. In some cases, the magnitude of the harm may be significant, as a fleeing defendant may resort to the use of a deadly weapon to accomplish escape, but there is no showing of a *likelihood* that the harm will be great when reasonable precautions are taken, merely a possibility. Factors (a), (b), and (c) all weigh against treating fugitive defendant apprehension as an abnormally dangerous activity. Absent one of the first three factors, the activity is not " 'ultrahazardous' " and, therefore, cannot be an abnormally dangerous activity. RESTATEMENT (SECOND) OF TORTS § 520 cmt. h. Accordingly, fugitive defendant apprehension is not an abnormally dangerous activity.

### 2. Fugitive Defendant Apprehension Does Involve a Peculiar Risk

■ ¶12 An activity that is not abnormally dangerous may, nonetheless, pose a peculiar risk of harm and thereby subject a principal to liability for the negligence of its independent contractor. Two sections of the *Restatement (Second) of Torts* address peculiar risk vicarious liability. Section 416 provides as follows:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Similarly, section 427 provides:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has

reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

As discussed above, these sections are two statements of the same principle. *See id.* §§ 416 cmt. a, 427 cmt. a.

¶13 In order for vicarious liability to apply under these sections, (1) the activity itself must pose a risk of physical harm absent special or reasonable precautions (i.e., the risk must be inherent to the activity); (2) the risk must "differ[ ] from the common risks to which persons in general are commonly subjected," *id.* § 416 cmt. d (i.e., the risk must be "peculiar" or "special"); (3) the principal must know or have reason to know of the risk; and (4) the harm must arise from the contractor's negligence with respect to the risk that is inherent in the activity, *see id.* § 426. Elements (1) and (2) are properly treated as questions of law.

¶14 Element (1) is very similar to factors (a) through (c) of the abnormally dangerous activity inquiry; the difference is of the required degree of expected harm—the expected harm of the ultrahazardous activity, *id.* § 520 cmt. h, must be greater. *Id.* § 427 cmts. b, c. Element (2) is very similar to factors (d) and (e) of the abnormally dangerous activity inquiry. Again, the difference is one of degree. Given that the abnormally dangerous activity inquiry is a question of law in Washington, it follows that these closely related inquiries in the peculiar risk context are also questions of law. Elements (3) and (4), by contrast, are mixed questions of law and fact because they involve circumstances that will vary from one case to the next, even given an identical activity.

¶15 In the context of fugitive defendant apprehension, there is a peculiar risk of harm absent special precautions (i.e., elements (1) and (2) of the peculiar risk exception are satisfied). *See Hayes v. Goldstein,* 120 Ohio App. 3d 116,

120, 697 N.E.2d 224 (1997) ("We are convinced that there is an indisputable danger inherent in the apprehension of one who has failed to answer to a charge levelled in a court of law."); *cf.* RCW 18.185.110(16) (defining performance of bail bond recovery without "due care to protect the safety . . . and the property of persons other than the defendant" as "unprofessional conduct"). This risk is twofold. First, there is a risk that the force that the bail bond recovery agent is authorized to employ will be exercised in a negligent or reckless manner causing physical harm. *Cf. State v. Portnoy*, 43 Wn. App. 455, 458-59, 466-67, 718 P.2d 805 (1986) (affirming assault convictions of bail bondsman who injured bailee's family members in attempt to capture bailee). Second, there is a risk that the bail bond recovery agent's negligent actions will cause the fugitive defendant to respond in a manner that causes physical harm to others. For example, if a bail bond recovery agent enters a fugitive defendant's home without identifying himself and fails to secure the fugitive defendant, the fugitive defendant might exercise deadly force in self-defense that causes physical harm to a third party.

¶16 The risks peculiar to and inherent in fugitive defendant apprehension differ from common risks to which members of the public are generally subjected. Members of the public are, in general, not subject to the risk of others mistakenly breaking into their homes or mistakenly apprehending them, nor are members of the public generally subject to the risk of being caught in the cross fire between fugitive defendants and those who would recapture them.

¶17 In sum, fugitive defendant apprehension is an activity that poses a peculiar risk of physical harm and, therefore, a bail bond company may be vicariously liable for the negligence of its independent contractor bail bond recovery agents.[3]

---

[3] We qualify our holding by noting that only the fugitive apprehension aspect of bail bond recovery is a peculiar risk activity and that there may be cases

## C. Scope of Peculiar Risk Vicarious Liability

■ ¶18 The Court of Appeals resolved this case under an "exception" to vicarious liability where a third party injured by the conduct of an independent contractor is not "innocent" but instead has "participated" in the dangerous activity that caused him injury. We reject this rule, which amounts to a mistakenly applied theory of assumption of risk. Indeed, the Court of Appeals inaccurately described our decision in *Epperly*, 65 Wn.2d 777, as reflecting an "assumption-of-risk rationale." *Stout*, 159 Wn. App at 353.[4] In fact, there is no exception to vicarious liability for inherently dangerous activities based on assumption of risk principles. The rule at issue in *Epperly* and our later decision in *Tauscher v. Puget Sound Power & Light Co.*, 96 Wn.2d 274, 635 P.2d 426 (1981), has nothing to do with whether the plaintiff seeking recovery shares the blame for his injuries. Rather, it is a limited rule that applies to *employees* of independent contractors.

¶19 We note that no party advocated below for the rule the Court of Appeals crafted. CJ Johnson moved for summary judgment in the trial court on the ground that it was not vicariously liable (to anyone) for the actions of its independent contractor.[5] Stout moved for partial summary judgment establishing that bail bond recovery is an inherently danger-

---

presenting a question of fact as to whether inherent or peculiar risks exist and are known to one hiring an independent contractor. On this record, we conclude that CJ Johnson is subject to vicarious liability for the actions of its independent contractor in seeking to apprehend Stout.

[4] In Washington, "[t]he assumption of risk doctrine is divided into four classifications: (1) express, (2) implied primary, (3) implied reasonable, and (4) implied unreasonable." *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 143, 875 P.2d 621 (1994). Express and implied primary assumption of risk are complete bars to recovery. *Id.* Implied reasonable and implied unreasonable assumption of risk are subsumed by the contributory fault statutory scheme. *Id.* at 143 n.8; *see also* RCW 4.22.015.

[5] CJ Johnson also raised issues relating to Warren's scope of employment and intentional conduct as well as joint and several liability, but these were not resolved by the trial court. On remand, these issues will remain.

ous activity giving rise to vicarious liability under *Tauscher*, *Epperly*, and the *Restatement (Second) of Torts*. The trial court denied Stout's motion and ultimately granted a renewed motion by CJ Johnson, stating:

> The Court finds that the Fugitive Recovery is not an "inherently dangerous" occupation and, as such, [CJ Johnson is] not responsible for the actions of independent contractors [Warren] and [Golden]. [T]he case against [CJ Johnson] is hereby dismissed.

CP at 240. On appeal, the briefing by Stout and CJ Johnson addressed the "inherently dangerous activity" argument. But, in a two-sentence paragraph at the end of its brief, CJ Johnson suggested that "Larry Stout is more akin to a particip[ant] than a third person, who should not be able to even claim this exception, such as an innocent bystander." Br. of Resp'ts at 19. The Court of Appeals took up this suggestion, setting aside the issue on appeal and concluding that even assuming bail bond recovery is an inherently dangerous activity, Stout is barred from any recovery against CJ Johnson because he "triggered and participated in the bail bond recovery, with some awareness of the attendant risks." *Stout*, 159 Wn. App. at 356.

¶20 There is no support for a new "exception" to vicarious liability. In Washington, the leading cases are *Epperly* and *Tauscher*, which explain the policy reasons unique to the independent contractor relationship that justify limiting vicarious liability with respect to suits brought by the independent contractor's employees. *See Epperly*, 65 Wn.2d at 783 (recognizing "the distinction between the level of duty to members of the public and the duty of the owner to one engaged to work upon the project as the employee of an independent contractor"); *see also Tauscher*, 96 Wn.2d at 282 (noting that "[t]he employee already has a remedy; one which the owner has paid for"). While the Court of Appeals recognized these cases involve employee suits, it posited that the plaintiff's knowledge of the peculiar risk presented

by the contractor's activity, and his decision to choose "the risk of peril over safety," destroys vicarious liability. *Stout*, 159 Wn. App. at 356.

¶21 This unprecedented extension of the rule barring employees from taking advantage of vicarious liability principles divorces the rule from its context entirely, with vexing results. Such an expansive notion would potentially bar suits based on vicarious liability by any plaintiff who engages in conduct that increases the risk of injury. Consider, for example, if a fugitive's mother blocks the door of her home when a bounty hunter tries to enter in pursuit of the fugitive. Is she barred from bringing suit if she is injured when the bounty hunter decides to shoot through the door?[6]

¶22 The analytical misstep is in reducing the vicarious liability exception of *Epperly* and *Tauscher* to nothing more than a principle of assumption of risk. But voluntary action in the face of known risk is *not* the reason for the exception. Rather, this limitation on vicarious liability for activities presenting an inherent danger or peculiar risk is rooted in the independent contractor relationship and arises against the backdrop of a nondelegable duty with respect to inherently dangerous activities. As we said in *Tauscher*, "an owner should not be permitted to shift from himself or herself liability for injuries arising out of work that is inherently dangerous by the simple expedient of entrusting that work to an independent contractor." 96 Wn.2d at 281. A corollary to this rule is that one employing an independent contractor should not be in a *worse* position than if the work had been performed by an employee. Because under our industrial insurance statutory scheme an employer is immune from most on-the-job injuries to employees, "[t]o hold an employer liable for injuries to employees of the indepen-

---

[6] It appears likely the legislature anticipated such suits when it expressly granted immunity to any *law enforcement officer* involved in a forced entry apprehension of a fugitive on behalf of a bail bond recovery agent. *See* RCW 18.185.300. Notably, the statute does not provide immunity to the bounty hunter.

dent contractor would subject the employer to a greater liability than if the employer had utilized his or her own employees." *Id.* at 282. Thus, the court in *Tauscher* recognized that disallowing vicarious liability in suits brought by employees was consistent with the overall goal of removing the lines of demarcation between owners and independent contractors with respect to inherently dangerous work. To the same extent liability is imposed as if the owner were an employer, so too are the limitations on an employer's liability to an employee maintained.

¶23 Importantly, any suggestion that the narrow exception to vicarious liability for inherently dangerous activities applies to nonemployee third parties was rejected at the same moment the exception was recognized. The starting point of the court's analysis in both *Epperly* and *Tauscher* was recognition of "the liability of the employer of an independent contractor to *third persons* injured by the negligence of the contractor in the performance of work of an inherently dangerous nature." *Tauscher*, 96 Wn.2d at 277 (emphasis added); *see Epperly*, 65 Wn.2d at 782-83. The only question was whether an employee of the independent contractor should be allowed to assert vicarious liability. *Epperly*, 65 Wn.2d at 782 ("plaintiff would apply the principle to the workman of that independent contractor"); *Tauscher*, 96 Wn.2d at 279-81 (noting jurisdictional split and stating that "[t]he question left unanswered . . . is whether the owner's liability for physical harm to others includes employees of the independent contractor"). Vicarious liability is described as "plainly for the benefit of persons not engaged in promoting the activity and . . . not intended to define the duty of the owner to those employed by an independent contractor to carry on the work." *Epperly*, 65 Wn.2d at 783; *see also Tauscher*, 96 Wn.2d at 279 (same). Given this development of the *employee* exception to vicarious liability, it does not extend to third parties. Otherwise, the exception would swallow the rule.

¶24 Moreover, erroneously grounding the exception in notions of knowledge and voluntary action confuses agency

principles with tort law principles and would create an entirely new doctrine of assumption of risk or contributory negligence. We have a well-defined body of law that tells us when a third-party plaintiff assumes a risk of harm such that he is barred from recovery. Only primary (express or implied) assumption of risk operates as a bar to recovery. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 875 P.2d 621 (1994). For example, if an individual signs a waiver when he or she participates in a paintball rally, he or she assumes the risk of taking a shot to the eye; voluntary participation in the activity precludes any suit. Here, the argument seems to be that a person who chooses to skip bail, necessitating a fugitive apprehension effort, assumes the risk of foreseeable events during that effort—at least as to the principal who retained the independent contractor.

¶25 But, innocence is not a precondition to asserting a tort claim, even one based on vicarious liability. Injury victims are often far from "innocent" with respect to the causes of their injury; this is comparative fault. There is no support in case law for creating a dual class of third-party plaintiffs: the innocent and the rest. Rather, a plaintiff's culpability, if any, is properly evaluated under settled tort doctrines. *Id.* at 143 (describing four categories of assumption of risk and noting that implied reasonable and unreasonable assumption of risk are subsumed in comparative fault).[7] However much Stout might have appreciated the risks involved in eluding a bail bond recovery agent, and even if he made a poor choice by not turning himself in, he was indisputably not engaged in promoting the activity of fugitive apprehension or bail bondsmanship. He was not connected with the business of bail bondsmanship or fugitive recovery. He is plainly a third party in the sense that he

---

[7] On remand, CJ Johnson may assert assumption of risk or comparative fault, depending on the facts. Moreover, as noted, we are not talking about a strict liability theory that if peculiar risk vicarious liability exists, nothing precludes the further consideration of whether the agent's conduct was outside the scope of his authority.

was a stranger to this independent contractor relationship. We hold that he may assert a cause of action based on vicarious liability against CJ Johnson.

## CONCLUSION

¶26 We hold that fugitive defendant apprehension is an activity that poses a peculiar risk of physical harm. Because Stout was not an employee of the independent contractor, he may assert a cause of action against CJ Johnson based on the theory of vicarious liability. The narrow exception to vicarious liability for employees of independent contractors does not apply. We reverse the Court of Appeals.

MADSEN, C.J., and CHAMBERS, FAIRHURST, WIGGINS, and GONZÁLEZ, JJ., concur.

¶27 OWENS, J. (dissenting) — In tort law, the general rule is that principals are not liable for the torts of their independent contractors. Vicarious liability arises from and consists of *exceptions* to that general rule. Curiously, and perhaps tellingly, the majority inverts the rule and the exception, referring to departures from vicarious liability as "exception[s]." *See* majority at 275-78.

¶28 Vicarious liability exceptions exist to serve certain purposes identified by the common law. When extension of an exception no longer serves the underlying purpose, I believe that vicarious liability should no longer be available. This case involves the "peculiar risk" exception, which allows vicarious liability where the principal hires an independent contractor to carry on an activity that poses a peculiar risk of physical harm. The majority holds that viewing the facts in the light most favorable to the nonmoving party, the facts of this case fall within the peculiar risk exception. Because the purpose of the peculiar risk exception is not served by applying vicarious liability in these circumstances, I respectfully dissent.

¶29 At the outset, I note that I agree with the majority's determination that fugitive defendant apprehension is an activity that poses a peculiar risk of physical harm. *See* majority at 270; RESTATEMENT (SECOND) OF TORTS §§ 416, 427 (1965). Because there is a peculiar risk, the majority concludes that peculiar risk liability applies without critically examining the limits of the peculiar risk exception. The limits of the exception are properly determined by looking to the exception's purpose; where vicarious liability fails to serve the purpose of the exception, the exception should no longer apply. The peculiar risk exception exists because certain activities pose a risk that people are not commonly subjected to and thus do not anticipate the need for taking precautions. *See* RESTATEMENT (SECOND) OF TORTS § 416 cmt. d. For example, a company that digs a trench immediately next to a public road creates a peculiar risk of physical harm to the public because the public does not expect the associated risk and does not take precautions against it. *See id*. Performing an activity involving a peculiar risk of physical harm causes the principal to become vicariously liable for its independent contractors when it would otherwise not be. *See id*. § 416 cmt. c.

¶30 When an individual with knowledge of the existence of the peculiar risk of physical harm that is inherent to a particular activity chooses to voluntarily participate in the activity anyway, the risk is no longer "peculiar" as to that individual. As a result, the underpinning of the peculiar risk exception falls away because the individual can anticipate the need to take precautions. Peculiar risk vicarious liability should no longer apply because a critical basis for departure from the general rule of nonliability for the acts of independent contractors is absent. Moreover, the individual who voluntarily participates in the activity, with knowledge of its peculiar risk, is no longer a typical member of the general public who cannot anticipate the peculiar risk.

¶31 With regard to the peculiar risk of harm in fugitive defendant apprehension, a fugitive defendant is the oppo-

site of an uninvolved member of the public. The fugitive defendant is actually one source of the "peculiar risk," and his or her failure to appear is invariably a cause in fact of the harm (i.e., but for the fugitive defendant's failure to appear or subsequently surrender, the bail bond recovery agent would not have been engaged in the course of action leading to the harm). Moreover, the fugitive defendant will almost always have cause to know of the risk inherent in failing to appear for a court hearing.

¶32 In the present case, the record clearly establishes that Larry Stout was very aware of the peculiar risk of harm inherent in fugitive defendant apprehension. Several months before the incident, Stout had been apprehended by two bail bond recovery agents who broke his door down and entered with guns drawn. One of those agents was Carl Warren. In the period of time leading up to the collision in this case, Stout was aware that Warren was again pursuing him and that Warren had kicked in the doors of the homes of persons with whom Stout had been staying. Stout was therefore necessarily aware of the peculiar risk of physical harm inherent to the activity of fugitive defendant apprehension. Nonetheless, Stout refused to turn himself in, in spite of his statement to Clarence Johnson, the owner of CJ Johnson Bail Bonds, that he would do so. Stout was aware of the peculiar risk of being involved in the activity of fugitive defendant apprehension and voluntarily chose to participate in that activity. The majority's conclusion that Stout was "not connected with the business of bail bondsmanship or fugitive recovery," majority at 279, is puzzling given that he is the customer of bail bondsmanship and that his decision not to appear in court created the need for fugitive recovery. Because he created the circumstances that necessitated fugitive recovery, Stout was actually a source of the peculiar risk. The entire rationale for peculiar risk liability simply does not apply to his situation given that he was both aware of and a cause of the peculiar risks of the activity he chose to engage in. Therefore, limiting the peculiar risk exception under these circumstances is appropriate.

¶33 It is well established that principals are not vicariously liable for the torts of their independent contractors except under certain limited exceptions. The purpose of the peculiar risk exception—the need to protect members of the public from unanticipated dangers—simply is not served by applying vicarious liability when the injured party had knowledge of the existence of the peculiar risk and nonetheless chose to participate in the activity. Because the purpose of the peculiar risk exception to that general rule is not served, vicarious liability should not apply in this situation.

¶34 I respectfully dissent.

C. JOHNSON and J.M. JOHNSON, JJ., concur with OWENS, J.